NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0674n.06
Filed: September 14, 2007

Case No. 06-3679

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| FERNANDO RAMIREZ, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| ALBERTO GONZALES, Attorney General, | ) | |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| | ) | |
| | ) | |

**BEFORE: MARTIN and BATCHELDER, Circuit Judges; O'MEARA**[*]**, District Judge.**

**ALICE M. BATCHELDER, Circuit Judge.** Petitioner Fernando Ramirez seeks review

of the order of the Board of Immigration Appeals ("Board") denying his motion to reopen removal

proceedings and rescind the order of removal entered in absentia, alleging ineffective assistance of

counsel. The Board concluded that the motion to reopen was untimely and refused to apply the

doctrine of equitable tolling because Ramirez failed to exercise due diligence to reopen the

proceedings. Because the Board did not abuse its discretion in denying the motion to reopen, we

affirm its decision and deny the petition for review.

## I. Background

---

[*]The Honorable John C. O'Meara, United States District Judge for the Eastern District of Michigan, sitting
by designation.

Ramirez, a native and citizen of Peru, entered the United States on October 25, 1994, as a non-immigrant crewman. Ramirez married a United States citizen, and on April 17, 1996, he received a conditional adjustment of status to that of permanent resident. Ramirez and his wife later filed a Joint Petition to Remove Conditions on Residence, which the former Immigration and Naturalization Service ("INS") denied on June 24, 1999. The case was then referred to an immigration judge ("IJ"). On that same day, the INS instituted removal proceedings against Ramirez.

Ramirez's original master calendar hearing was scheduled to occur on December 22, 1999, in Detroit, Michigan. Ramirez, through his attorney at the time, Manlin Chee, moved to change venue to Atlanta, Georgia, and also moved for a telephonic hearing. The IJ denied both motions on December 22, 1999, and continued the case to March 8, 2000. The Notice of Hearing in Removal Proceedings indicated that Ramirez had been scheduled for a master hearing on March 8, 2000, in Detroit, Michigan. This Notice also informed Ramirez about the consequences if he failed to appear as required, including the possibility of being ordered removed in absentia.

Neither Ramirez nor Ms. Chee, however, appeared in Detroit on March 8, 2000, and the IJ ordered him removed. The following day, Ms. Chee wrote a letter to the IJ, asking her to reconsider the in absentia removal order. Ms. Chee explained that she never received the order denying her motion for a telephonic hearing, and as a result, on March 8, 2000, Ramirez had appeared in Ms. Chee's office for his hearing. Ms. Chee did not, however, formally file a motion to reopen removal proceedings.

In March 2003, Ramirez contacted another attorney, Jeremy McKinney, who informed Ramirez in a letter dated March 26, 2003, that he had been ordered removed in absentia on March

8, 2000. Mr. McKinney also indicated that while Ms. Chee submitted a letter in an effort to reopen the case, she never submitted a formal motion to reopen. Mr. McKinney stated that he believed such a motion might have been successful, but that the time for filing a motion to reopen had expired. He suggested that Ramirez immediately retain counsel in Detroit who specializes in deportation proceedings, and he even provided Ramirez a listing of American Immigration Lawyer Association attorneys in Detroit.

In January and March 2004, Ramirez's wife contacted another attorney, Scott Keillor, to discuss Ramirez's "immigration situation." Finally, in April 2005, Ramirez contacted another attorney, Terence Hoerman, to assist with his case and file a motion to reopen. Ramirez, through Mr. Hoerman, filed a complaint with the North Carolina State Bar against Ms. Chee. On May 3, 2005, the State Bar replied and informed Ramirez that Ms. Chee had been placed on inactive status and that the Bar could not pursue his complaint until Ms. Chee is reinstated to active status. On October 4, 2005, more than five years after the removal hearing, Ramirez moved to rescind the removal order entered in absentia and reopen the prior proceedings on the grounds of ineffective assistance of his first attorney, Ms. Chee. The IJ denied the motion as untimely.

Ramirez appealed the IJ's decision. Though the Board expressly concluded that Ms. Chee's erroneous belief that the IJ would conduct the hearing telephonically constituted ineffective assistance of counsel, it nevertheless denied Ramirez's appeal, finding that his motion to reopen was untimely. The Board noted that "the 180-day statutory deadline for a motion seeking to rescind an in absentia order will only be equitably tolled when the alien has acted with due diligence in pursuing reopening after learning of the ineffective assistance." The Board found that Ramirez learned of Ms. Chee's ineffective assistance when he received the March 26, 2003, letter from Jeremy McKinney

3

informing Ramirez that he had been ordered removed and that Ms. Chee failed to file a motion to reopen. Ramirez then did nothing for nearly nine months, until his wife contacted Scott Keillor in January 2004. "Regardless of the completeness of the information that [his wife] provided in those consultations, and the nature of any advice given by Mr. Keillor based on [his wife's] representations, the fact remains that for eight or nine months after being advised of the in absentia order and his first attorney's ineffectiveness by Mr. McKinney, the respondent did nothing about it." Accordingly, the Board upheld the denial of the motion to reopen because Ramirez failed to exercise due diligence. Ramirez then petitioned this Court for review of the Board's decision.

## II. Analysis

We review for abuse of discretion the Board's denial of a motion to reopen. *See Denko v. INS*, 351 F.3d 717, 723 (6th Cir. 2003). "'In determining whether the Board abused its discretion, this Court must decide whether the denial of [the] motion to reopen . . . was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group.'" *Sako v. Gonzales*, 434 F.3d 857, 863 (6th Cir. 2006) (quoting *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005)).

An order of removal entered in absentia may be rescinded "upon a motion to reopen filed within 180 days after the date of the order of removal if the alien demonstrates that the failure to appear was because of exceptional circumstances." 8 U.S.C. § 1229a(b)(5)(C)(i)[1]; *see also* 8 C.F.R. § 1003.23(b)(4)(ii). "Exceptional circumstances" are those "circumstances (such as battery or

_____

[1] 8 U.S.C. § 1229a(b)(5)(C)(ii) provides that an order entered in absentia may be rescinded "upon a motion to reopen filed *at any time* if the alien demonstrates that the alien did not receive notice in accordance with paragraph (1) or (2) of section 239(a) [8 U.S.C. § 1229(a)] or the alien demonstrates that the alien was in Federal or State custody and the failure to appear was through no fault of the alien." (Emphasis added). This provision is not at issue in this appeal. Ramirez admitted that Ms. Chee received notice of the March 8, 2000, hearing, a permissible means of giving notice under the statute. *See* 8 U.S.C. § 1229(a)(1).

4

extreme cruelty to the alien or any child or parent of the alien, serious illness of the alien, or serious illness or death of the spouse, child, or parent of the alien, but not including less compelling circumstances) beyond the control of the alien." 8 U.S.C. § 1229a(e)(1). "[O]ur review of the denial of a motion to reopen to rescind an in absentia removal order is confined to (1) the validity of the notice that was provided to the alien; (2) the reasons the alien gives for not attending the proceeding; and (3) whether the alien is removable." *Sleiman v. Gonzales*, 2007 U.S. App. LEXIS 17776, at *6 (6th Cir. July 20, 2007) (citing 8 U.S.C. § 1229a(b)(5)(D)).

Ramirez filed his motion to reopen on October 4, 2005, well outside the 180 day period that began to run on March 8, 2000, the date the IJ entered the in absentia order of removal. Ramirez asserts that a motion to reopen "based upon the ineffectiveness of counsel can be equitably tolled during the period of time that the alien is not aware of the ineffectiveness of counsel" and until the alien has complied with *In re Lozada*, 19 I. & N. Dec. 637, 639 (BIA 1988), which sets forth the requirements to bring an ineffective assistance claim. Ramirez admits that he first became aware of Ms. Chee's ineffective assistance when he received Mr. McKinney's March 26, 2003, letter. He contends, however, that in order to comply with *Lozada* he had to file a grievance against Ms. Chee with the State Bar of North Carolina and then wait for a response before filing the motion to reopen. Because he filed the motion to reopen within 180 days of receiving a response from the North Carolina State Bar, Ramirez says, the motion should be considered timely.

We recognize that a petitioner in immigration proceedings may present a claim for ineffective assistance of counsel. *See Scorteanu v. INS*, 339 F.3d 407, 413 (6th Cir. 2003). "Because a deportation proceeding is a purely civil action, an ineffective assistance of counsel claim is reviewed under the Due Process Clause of the Fifth Amendment rather than under the Sixth Amendment."

5

*Denko*, 351 F.3d at 723 (internal citation and punctuation omitted). "Ineffective assistance of counsel in a deportation proceeding will rise to the level of a due-process violation under the Fifth Amendment 'only if the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case.'" *Id.* (quoting *Ramirez-Durazo v. INS*, 794 F.2d 491, 499-500 (9th Cir. 1986)).

While the Board's decision seems to conclude that the 180 day period may be equitably tolled due to ineffective assistance of counsel, we need not decide, "in the instant case, whether the statute is subject to equitable tolling because, even if this court were to so concede, [Ramirez] has failed to prove entitlement to equitable relief." *Scorteanu*, 339 F.3d at 413; *see also Jobe v. INS*, 238 F.3d 96, 101 (1st Cir. 2001) (". . . Jobe learned that an IJ had taken some action on his asylum application and was advised to consult an attorney immediately. Despite this knowledge and advice, Jobe took no action to protect his rights for more than half a year. In our view, this fact conclusively establishes that Jobe was insufficiently diligent in pursuing his asylum application to warrant the provision of any equitable relief that might be available under the statute.").

A litigant seeking to invoke equitable tolling must demonstrate that he acted with due diligence in pursuing his rights. *See Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 151 (1984) ("One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence."). "Due diligence requires an alien to prove that the delay in filing the motion to reopen was due to 'an exceptional circumstance beyond his control.'" *Tapia-Martinez v. Gonzales*, 482 F.3d 417, 423 (6th Cir. 2007) (quoting *Scorteanu*, 339 F.3d at 414). Here, as the Board found, Ramirez became aware of Ms. Chee's ineffective assistance of counsel when he received the March 26, 2003, letter from Mr. McKinney. Ramirez did nothing for eight or nine months; his wife

6

contacted another attorney, first in January and again in March 2004; he did not retain counsel to deal with his order of removal for still another eleven months; and not until October 4, 2005, nearly six months after retaining counsel, did Ramirez, through his attorney, file the motion to reopen. At that point, two years had passed since Ramirez learned of the removal order (and received advice that he should immediately retain counsel to help him with this matter) and over five years had passed since the IJ issued the order of removal. We agree with the Board that Ramirez simply failed to act with due diligence in pursuing the motion to reopen.

Moreover, Ramirez's *Lozada* argument is without merit. In *Lozada*, the Board set forth the requirements for filing an ineffective assistance of counsel claim:

> when an alien has averred ineffective assistance of counsel, the motion should be supported by 1) an affidavit setting forth in detail the agreement that was entered into with former counsel with respect to the actions to be taken, "as well as any representations made by counsel to the alien; 2) proof that the movant has informed former counsel of the allegations in writing, as well as any response received; and 3) a statement detailing "whether a complaint has been filed with appropriate disciplinary authorities regarding such representation, and if not, why not."

*Scorteanu*, 339 F.3d at 414 (quoting *In re Lozada*, 19 I.&N. Dec. at 639). As the government correctly points out, *Lozada* contains absolutely no requirement that Ramirez wait until he had received a response from the appropriate disciplinary authority before filing a motion to reopen.

Additionally, Ramirez claims that the IJ and Board violated both customary international law and the requirements of due process by failing to consider his strong family ties to the United States. Ramirez's claims are baseless. The relief Ramirez seeks in his motion to reopen is discretionary. Because "an alien does not have a constitutionally protected interest in receiving discretionary relief from removal or deportation," *De Araujo v. Gonzales*, 457 F.3d 146, 154 (1st Cir. 2006), he can hardly claim a constitutionally protected interest in what the IJ or BIA considers, or does not

consider, in determining whether to grant discretionary relief. Ramirez has no due process right to have his family ties considered in relation to his motion to reopen removal proceedings.

Moreover, as the Eleventh Circuit has indicated, "[t]o the extent possible, courts must construe [U.S. law] so as to avoid violating principles of public international law. But public international law is controlling only 'where there is no treaty and no controlling executive or legislative act or judicial decision . . . .'" *Garcia-Mir v. Meese*, 788 F.2d 1446, 1453 (11th Cir. 1986) (quoting *The Paquete Habana*, 175 U.S. 677, 700 (1900) (internal citations omitted). Controlling statutes and regulations govern the requirements for reopening removal proceedings and rescinding orders of removal made in absentia, *see, e.g.*, 8 U.S.C. §§ 1229a *and* 8 C.F.R. § 1003.23, and these provisions do not include strong family ties as a basis for granting this kind of relief.

### III.  Conclusion

For the foregoing reasons, we **affirm** the Board's dismissal of Ramirez's motion to reopen, and we **deny** the petition for review.