RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 11a0030p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

VAKHTANG PRUIDZE,

                        *Petitioner,*

        *v.*

ERIC H. HOLDER, JR., United States Attorney
General,

                        *Respondent.*

No. 09-3836

On Petition for Review of an Order
of the Board of Immigration Appeals.
No. A077 434 982.

Argued: October 18, 2010

Decided and Filed: February 3, 2011

Before: BOGGS, MOORE, and SUTTON, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Herman S. Dhade, DHADE & ASSOCIATES, Farmington Hills, Michigan, for Petitioner. Jessica Segall, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. Trina Realmuto, NATIONAL IMMIGRATION PROJECT OF THE NATIONAL LAWYERS GUILD, Boston, Massachusetts, for Amici Curiae. **ON BRIEF:** Marshal E. Hyman, Russell Reid Abrutyn, MARSHAL E. HYMAN & ASSOCIATES, PC, Troy, Michigan, for Petitioner. Anthony J. Messuri, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. Trina Realmuto, NATIONAL IMMIGRATION PROJECT OF THE NATIONAL LAWYERS GUILD, Boston, Massachusetts, Beth Werlin, AMERICAN IMMIGRATION COUNCIL, Washington, D.C., for Amici Curiae.

_____

**OPINION**

_____

    SUTTON, Circuit Judge. The Board of Immigration Appeals interprets a regulation promulgated by the Attorney General to provide that the Board lacks

1

jurisdiction to review a motion to reopen once an alien leaves the United States, whether voluntarily or involuntarily. Yet the statute that empowers the Board to consider motions to reopen says nothing about jurisdictional limitations of any kind, let alone this kind. Because this regulatory interpretation has no roots in any statutory source and misapprehends the authority delegated to the Board by Congress, the Board's order disclaiming power to consider the motion to reopen filed by Vakhtang Pruidze must be vacated.

I.

In July 2004, Pruidze, then a green-card holder, returned to the United States and applied for admission as a lawful permanent resident alien. The Department of Homeland Security denied his application for admission, explaining that Pruidze's state conviction for a controlled-substance crime made him inadmissible. After a merits hearing, an immigration judge found Pruidze removable and denied his application for withholding of removal. The Board affirmed the immigration judge's decision without opinion, and this court denied Pruidze's petition for review.

On April 6, 2009, the Department issued a warrant for Pruidze's removal and removed him on April 29. Six days later, Pruidze moved the state court to reopen his criminal proceedings because he had entered his guilty plea without counsel. On May 12, 2009, the state court set aside Pruidze's conviction and redocketed the case.

On May 29, 2009, Pruidze moved the Board to reopen his removal proceedings based on the state court's decision to set aside the conviction. The Board denied his motion, reasoning that, because Pruidze was no longer in the United States, it did not have "jurisdiction" to hear Pruidze's motion. The Board relied on *Matter of Armendarez-Mendez*, 24 I. & N. Dec. 646 (B.I.A. 2008), which held that the "departure bar," 8 C.F.R. § 1003.2(d), divested the Board of "jurisdiction" to entertain motions to reopen filed by aliens who are abroad. The departure bar says that "[a] motion to reopen . . . shall not be made by . . . a person who is the subject of exclusion, deportation, or removal proceedings subsequent to his or her departure from the United States." *Id.*

II.

Pruidze's petition for review raises one question: Does the Board of Immigration Appeals lack jurisdiction to consider an alien's motion to reopen once the alien is no longer in the United States? The answer is no.

A.

Some background is in order. In 1940, Congress put the Attorney General in charge of immigration matters, giving the office the authority "to make and prescribe, and from time to time to change and amend, such rules and regulations not in conflict with this Act as he may deem necessary and proper in aid of the administration and enforcement of this title." Pub. L. No. 76-670, 54 Stat. 675, 675, § 37(a) (1940). That same year, the Attorney General established the Board of Immigration Appeals. *Regulations Governing Departmental Organization and Authority*, 5 Fed. Reg. 3502, 3503 (Sept. 4, 1940) (codified at 8 C.F.R. § 90.2). By regulation, the Board may entertain immigration-related motions on behalf of the Attorney General subject to limitations that the Attorney General places on that authority. *Id.* at 3504 (codified at 8 C.F.R. § 90.9 (1941)). In 1952, the Attorney General promulgated the "departure bar," a regulation barring the Board from reviewing a motion to reopen filed by a person who has left the United States. 17 Fed. Reg. 11469, 11475 (Dec. 19, 1952) (codified at 8 C.F.R. § 6.2 (1953)). Then, not unlike today, the regulation read:

> A motion to reopen or a motion to reconsider [before the Board] shall not be made by or in behalf of a person who is the subject of deportation proceedings subsequent to his departure from the United States. Any departure of such person from the United States occurring after the making of a motion to reopen or a motion to reconsider shall constitute a withdrawal of such motion.

*Id.* Early on, the Board construed the departure bar as a limitation on the agency's "jurisdiction." *Matter of G-Y-B*, 6 I. & N. Dec. 159, 159–60 (B.I.A. 1954). The substance of the departure bar has not changed, although the Attorney General has redesignated it several times. *See* 27 Fed. Reg. 96, 96–97 (Jan. 5, 1962) (codified at 8 C.F.R. § 3.2 (1962)); 61 Fed. Reg. 18900, 18905 (Apr. 29, 1996) (codified at 8 C.F.R.

§ 3.2(d) (1997)); 68 Fed. Reg. 9824, 9830 (Feb. 28, 2003) (codified at 8 C.F.R. § 1003.2(d)).

While continuity has marked the regulation, change has marked the statutory backdrop to it.  In 1961, Congress created a statutory counterpart to the Board's departure bar for judicial review of immigration decisions, establishing that federal courts could not review deportation and exclusion orders if the aliens left the country after the agency issued the contested orders.  Act of Sept. 26, 1961, Pub. L. No. 87-301, § 5(a), 75 Stat. 650, 651–53 (1961) (codified at 8 U.S.C. § 1105a(c) (1962)) ("An order of deportation or of exclusion shall not be reviewed by any court if the alien . . . has departed from the United States. . . .").

In 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act, overhauling immigration law in many respects.  Pub. L. No. 104-208, div. C, 110 Stat. 3009, 3009-546 (Sept. 30, 1996).  Of import here, Congress

- codified the right to file a motion to reopen, IIRIRA § 304(a)(3) (codified at 8 U.S.C. § 1229a(c)(6) (1997)) (recodified as § 1229a(c)(7) in 2005 without substantive changes, *see* REAL ID Act of 2005, Pub. L. No. 109-13, div. B, § 101(d), 119 Stat. 231, 304 (May 11, 2005));

- repealed the statutory departure bar to judicial review, IIRIRA § 306(b); and

- adopted a 90-day period for the government to deport a person ordered removed, IIRIRA § 305(a)(3) (codified at 8 U.S.C. § 1231(a)(1)), and a 60- or 120-day limit for voluntary departures, IIRIRA § 304(a)(3) (codified at 8 U.S.C. §§ 1229c(a)(2)(A), (b)(2)).

In implementing the Act, the Attorney General promulgated several additional regulations.  *Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures*, 62 Fed. Reg. 10312 (Mar. 6, 1997).  Among other regulatory considerations, the Attorney General, after a notice and comment period, concluded that the Act did not repeal the departure bar and opted to maintain the bar on motions to reopen and motions for reconsideration.  *Id.* at 10321, 10331.

In 2000, Congress made additional revisions to the statute governing motions to reopen.  *See* Violence Against Women Act of 2000, Pub. L. No. 106-386, div. B, § 1506(c), 114 Stat. 1464, 1528 (codified at 8 U.S.C. § 1229a(c)(6)(C)(iv) (2000)).  In an effort to aid victims of domestic violence, Congress exempted some alien victims from the deadlines on motions to reopen.  8 U.S.C. § 1229a(c)(6)(C)(iv) (2000).  In 2005, Congress added a qualifying requirement to the exemption:  the alien victim must be "physically present in the United States at the time of filing the motion."  *See* Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. No. 109-162, § 825(a)(2)(F), 119 Stat. 2960, 3063–64 (Jan. 5, 2006) (codified at 8 U.S.C. § 1229a(c)(7)(C)(iv)(IV)).

In 2008, the Board addressed these revisions in *Matter of Armendarez-Mendez.* It concluded that none of the statutory revisions repealed 8 C.F.R.§ 1003.2(d), "that the departure bar rule remains in full effect" and that it continues to impose a "jurisdictional" bar on the Board's authority.  24 I. & N. Dec. 646, 660.

## B.

In reviewing an administrative action that turns on the meaning of a federal statute that Congress has empowered the agency to interpret, we generally give the agency wide berth in construing the provision.  Unless the statute's terms "directly address[] the precise question at issue," we defer to the agency's "reasonable" interpretation of the provision.  *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843–44 (1984).  There is some question whether *Chevron* applies to disputes about the scope of an agency's jurisdiction.  Although the Supreme Court has invoked *Chevron* in resolving some disputes over an agency's jurisdiction, *see, e.g.*, *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000); *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833 (1986), it has not mentioned *Chevron* in seemingly similar disputes, *see Union Pac. R.R. v. Bhd. of Locomotive Eng'rs*, __ U.S. __, 130 S. Ct. 584 (2009); *Miss. Power & Light Co. v. Miss. ex rel. Moore*, 487 U.S. 354 (1988), and, so far as we can tell, has yet to resolve the debate that Justice Scalia and Justice Brennan first waged over the point in 1988.  *See*

*Miss. Power & Light*, 487 U.S. at 382–83 (Scalia, J., concurring in the judgment) (*Chevron* applies); *id.* at 386–87 (Brennan, J., dissenting) (*Chevron* does not apply). Our circuit has not taken a position on the issue, *see Bush & Burchett, Inc. v. Reich*, 117 F.3d 932, 936 (6th Cir. 1997), and as of 2009 two scholars agreed that "[t]he Supreme Court has yet to resolve whether *Chevron* deference should apply when an agency is interpreting the reach of its own jurisdiction." Nathan Alexander Sales & Jonathan H. Adler, *The Rest Is Silence:* Chevron *Deference, Agency Jurisdiction, and Statutory Silences*, 2009 U. Ill. L. Rev. 1497, 1500. Today is not the day to stake out a position on the point because the issue does not affect the outcome of this case. Pruidze wins either way for two basic reasons.

*First*, no statute gives the Board purchase for disclaiming jurisdiction to entertain a motion to reopen filed by aliens who have left the country. The most relevant statute, adopted in the 1996 Immigration Act, offers nothing to support such an interpretation of the regulation. "An alien," it says, "may file one motion to reopen proceedings under this section, except that this limitation shall not apply so as to prevent the filing of one motion to reopen described in subparagraph (C)(iv)." 8 U.S.C. § 1229a(c)(7)(A). This is an empowering, not a divesting, provision, as it grants the Board authority to entertain a motion to reopen. Even the limitations contained in the provision—permitting the alien to file just one motion and excepting alien victims of domestic violence from this limitation, *id.* §§ 1229a(c)(7)(A), 1229a(c)(7)(C)(iv)—do not purport to be jurisdictional. The definition of "alien"—"any person not a citizen or national of the United States," 8 U.S.C. § 1101(a)(3)—also provides no basis for saying that the Board lacks jurisdiction over certain types of motions to reopen.

The only other clue provided by the 1996 Immigration Act is that Congress *repealed* the one statutory departure bar then in existence, the one applicable to judicial review. Pub. L. No. 104-208, div. C, § 306(b), 110 Stat. 3009, 3009-612. Even if an alien's departure from the United States had legal significance at one point in time under the statutory scheme, the repeal of this departure bar in 1996 eliminates that potential handhold for the Board's interpretation. Not one of the relevant statutory provisions,

then, gives the Board authority "to decline the exercise of jurisdiction which is given." *Union Pac.*, 130 S. Ct. at 590 (quoting *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821)).

*Second*, even if doubt lingered about the Board's authority to interpret the regulation as jurisdictional, a recent line of Supreme Court decisions removes it. Over the last decade or so, the Court has been vigilant in clarifying the distinction between jurisdictional requirements on the one hand and claim-processing and other mandatory rules on the other. *See, e.g.*, *Reed Elsevier, Inc. v. Muchnick*, __ U.S. __, 130 S. Ct. 1237 (2010); *Union Pac.*, 130 S. Ct. 584; *Bowles v. Russell*, 551 U.S. 205 (2007); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 510 (2006); *Kontrick v. Ryan*, 540 U.S. 443 (2004); *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 90 (1998). Not all mandatory requirements, these decisions make clear, establish jurisdictional prerequisites.

Nothing in the statutory scheme suggests that the Board lacks jurisdiction—the legal power or adjudicative competence, *see Reed Elsevier*, 130 S. Ct. at 1243—to issue decisions that affect the legal rights of aliens abroad. Whether the regulation itself—essentially a mandatory claim-processing rule to the effect that the Board categorically will reject motions to reopen filed by aliens who have left the country or will always treat such motions as withdrawn upon the alien's departure—is valid is a different matter, one that has divided the lower courts, *compare Coyt v. Holder*, 593 F.3d 902 (9th Cir. 2010), *and Contreras-Bocanegra v. Holder*, __ F.3d __, 2010 WL 5209228 (10th Cir. 2010), *with William v. Gonzales*, 499 F.3d 329 (4th Cir. 2007), and one on which this court has taken a partial position, *see Madrigal v. Holder*, 572 F.3d 239 (6th Cir. 2009) (holding that the departure bar does not apply to the involuntary removal of aliens). What matters here is that the Board has assumed authority to interpret the regulation as a jurisdictional rule, not a mandatory rule, and we cannot ignore the difference between the two. "As a rule about subject-matter jurisdiction," the departure bar "is untenable." *Marin-Rodriguez v. Holder*, 612 F.3d 591, 593 (7th Cir. 2010).

*Union Pacific R.R. v. Brotherhood of Locomotive Engineers*, 130 S. Ct. 584, shows why. Congress delegated authority to the National Railroad Adjustment Board

over "all disputes," 45 U.S.C. § 152 First, between carriers and their employees, 45 U.S.C. § 153(h) First, (i). The Adjustment Board promulgated a regulation saying that "No petition shall be considered . . . unless the subject matter has been handled in accordance with the provisions of the [statute]." 29 C.F.R. § 301.2(b). One of those provisions required the parties to conference before submitting a dispute to the Adjustment Board for arbitration, 29 C.F.R. pt. 301 (2009); 45 U.S.C. § 152, and the Adjustment Board construed the requirement as a jurisdictional prerequisite. 130 S. Ct. at 593–94. After explaining that legal rules can be mandatory without being jurisdictional, the Court held that the Adjustment Board could not curtail its own jurisdiction in this manner. *Id.* at 596–98. Nothing in the statute, the Court reasoned, linked this conferencing requirement with the Adjustment Board's powers, and no statute authorized the Board to create jurisdictional rules. *Id.*

*Union Pacific* proves Pruidze's point. The statute in *Union Pacific* vested the agency with broad authority over "*all* disputes," which the agency nonetheless declined to exercise. *Union Pac.*, 130 S. Ct. at 597 (emphasis added); *see* 45 U.S.C. § 153(h) First. Just so here: Congress empowered the Board to consider motions to reopen filed by "*any person* not a citizen or national of the United States." 8 U.S.C. § 1101(a)(3) (emphasis added); *see also id.* § 1229a(c)(7)(A). Yet, as in *Union Pacific*, the Board of Immigration Appeals construed one of its legal rules as jurisdictional. *See* 8 C.F.R. § 1003.2(d); *see also* 29 C.F.R. § 301.2(b); *Matter of Armendarez-Mendez*, 24 I. & N. Dec. 646. The Board of Immigration Appeals, just like the National Railroad Adjustment Board, cannot point to any statute indicating, or even suggesting, that the relevant requirement—the physical-presence requirement in one instance, the conferencing one in the other—is jurisdictional. On this statutory slate, the agency may not disclaim jurisdiction to handle a motion to reopen that Congress empowered it to resolve. *See Union Pac.*, 130 S. Ct. at 596.

Even the Board does not buy everything it is trying to sell. In *Matter of Bulnes-Nolasco*, 25 I. & N. Dec. 57 (B.I.A. 2009), the Board held that it could take action with respect to a motion to reopen filed by an alien who has left the United States if the alien

claims not to have received notice of the warrant of removal. *Id.* at 58–60. Yet if the Board lacks the "adjudicatory authority," *Reed Elsevier*, 130 S. Ct. at 1243, to hear motions to reopen filed by aliens who are abroad, it follows that it lacks jurisdiction to hear a subset of those motions. *See Marin-Rodriguez*, 612 F.3d at 595. *Bulnes-Nolasco* suggests that the departure bar does not deprive the Board of jurisdiction to handle all matters relating to removed aliens, which is the explanation the Board gave for declining to hear Pruidze's motion to reopen. And the reasons the Board gave for its decision are what we must review. *See Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196–97 (1947).

No doubt, the agency is not required—by statute or by this decision—to grant Pruidze's motion to reopen. But it is required—by both—to consider it. When the Board reconsiders Pruidze's motion to reopen, it has authority to determine whether the motion is untimely and, if so, whether the departure bar limits the Board's ability to grant Pruidze relief. *Cf. Zhang v. Holder*, 617 F.3d 650 (2d Cir. 2010) (examining validity of departure bar as applied to Board's sua sponte authority to grant motions to reopen). If, on the other hand, the Board finds that Pruidze's motion is not time-barred, it may wish to consider whether the departure bar is a mandatory rule. *Cf. Madrigal*, 572 F.3d at 245–46. These are all things the Board *may* do, but because we review what the Board *did* do—improperly deny Pruidze's motion on the invalid ground that it does not have jurisdiction over motions to reopen filed by aliens abroad—they are questions for another day. *See Chenery*, 332 U.S. at 196–97.

Perhaps, one might say, we have stretched the analogy to *Union Pacific*. While Congress gave the Adjustment Board power to "adopt such rules as it deems necessary to control proceedings," 45 U.S.C. § 153 First (v) (2006), it gave the Attorney General power to "establish such regulations, . . . review such administrative determinations in immigration proceedings, delegate such authority, and perform such other acts as the Attorney General determines to be necessary for carrying out this section." 8 U.S.C. § 1103(g)(2). The latter delegation of authority, we acknowledge, is broader than the former. But that reality misses the larger point, the one dispositive here—that an agency

cannot contract its power to hear claims that fall plainly within its statutory jurisdiction. *See Union Pac.*, 130 S. Ct. at 596–98; *Arbaugh*, 546 U.S. at 510, 514.

The Attorney General adds that, under *Chevron*, we must defer to its interpretation of § 1229a(c)(7) because the provision is silent—or at least ambiguous—on whether an alien abroad may file a motion to reopen. *See* 467 U.S. at 843–44. But the Board cannot clear the first step of *Chevron* because the Court has drawn a line between mandatory rules and claim-processing rules on the one side and jurisdictional ones on the other. *Union Pac.*, 130 S. Ct. at 596. Whatever powers of interpretation *Chevron* gives agencies, it does not allow them to alchemize the authority to pass a mandatory rule into the authority to pass a jurisdictional one. We defer to an agency's efforts to fill statutory gaps, not to create them, and in this instance Congress left no gap to fill when it empowered the agency to consider all motions to reopen filed by an alien, not just those filed by aliens who remain in the United States up to the time of decision. 8 U.S.C. § 1229a(c)(7)(A). The Attorney General may be right that there is "silence" in the statutory scheme. But the relevant silence goes to the alleged authority to disclaim jurisdiction over motions to reopen in the face of clear language giving the Board jurisdiction over all motions to reopen. That is not the kind of silence that aids an agency.

The Attorney General takes a different tack in leaning on *Commodity Futures Trading Commission v. Schor*, 478 U.S. 833. "[W]hen Congress revisits a statute giving rise to a longstanding administrative interpretation without pertinent change," *Schor* says that "the congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress." *Id.* at 846. Yet when Congress enacted the 1996 Immigration Act, there was no statutory provision to "revisit." Until then, Congress had not spoken about motions to reopen and thus it had said nothing that could give rise to an agency interpretation that Congress could codify. The Attorney General had adopted the departure bar in accordance with his then-unlimited authority over motions to reopen, *see* 17 Fed. Reg. 11469, 11475 (Dec. 19, 1952) (codified at 8 C.F.R. § 6.2 (1953)), and Congress created a statutory right to

file a motion to reopen for the first time in 1996.  No less importantly, the *Schor* presumption is just that, a presumption, and the Board can point to nothing in positive law suggesting that the Board does not have the power to consider motions to reopen in this setting.  *See Union Pac.*, 130 S. Ct. at 596.

### III.

We vacate the Board's order and remand the case to the agency for further proceedings.