*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 11a0124p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

Nos. 08-4584; 09-3644
JOSUE GORDILLO, LESLIE M. CASTELLANOS,
                                    *Petitioners,*

           *v.*

ERIC H. HOLDER, JR., Attorney General,
                                    *Respondent.*

      No. 09-3644
LESLIE M. CASTELLANOS,

                                    *Petitioner,*

           *v.*

ERIC H. HOLDER, JR., Attorney General,
                                    *Respondent.*

> Nos. 08-4584; 09-3644

On Petition for Review of an Order
of the Board of Immigration Appeals.
Nos. A073 412 419; A073 412 420.

Argued: October 21, 2010

Decided and Filed: May 13, 2001

Before: BOGGS, MOORE, and KETHLEDGE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Michael E. Piston, PISTON & CARPENTER P.C., Troy, Michigan, for Petitioners. Christopher McGreal, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Michael E. Piston, PISTON & CARPENTER P.C., Troy, Michigan, for Petitioners. Christopher McGreal, James A. Hunolt, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

————————

**OPINION**

————————

KETHLEDGE, Circuit Judge.   The Nicaraguan Adjustment and Central American Relief Act of 1997 ("NACARA" or "the Act"), Pub. L. No. 105-100, 111 Stat. 2160, makes certain Guatemalans and Salvadorans eligible for suspension of deportation (now called removal) from the United States.   It is undisputed that the petitioners here—Josue R. Gordillo and Leslie M. Castellanos, husband and wife, both of Guatemala—were eligible for relief under the Act.   They did not obtain that relief, however, because their lawyer never cited the relevant provision of NACARA during their removal proceedings before the immigration judge or the Board of Immigration Appeals.   The couple eventually learned of their eligibility and moved to reopen their case.   The Board denied the motion.   We vacate and remand.

I.

A.

Castellanos first entered the United States in January 1990, apparently without inspection, to study hotel and business administration at a college in Ohio.   Gordillo entered the United States without inspection on June 18, 1990.   Meanwhile, in January 1991, the Attorney General entered into a settlement agreement providing certain benefits to Guatemalan asylum applicants.   *See American Baptist Churches v. Thornburgh* (ABC), 760 F. Supp. 796 (N.D. Cal. 1991).   In June of that year, Castellanos registered herself and her husband for benefits pursuant to the settlement.   That registration later turned out to be a prerequisite for relief under NACARA.

Castellanos left the United States in December 1991 but returned five months later as a visitor for pleasure.   She overstayed her visa and thereafter hired an attorney, named Hicks, to prepare an application for asylum and withholding of removal on behalf of herself and her husband.   Hicks filed the application in October 1995, listing Gordillo as the primary applicant and Castellanos as a dependent.

On January 12, 1999—after NACARA took effect—an immigration judge denied the couple's application and ordered them deported unless they voluntarily departed the country first. Hicks filed an appeal. Although he generally argued before the IJ and the Board that the couple should be granted suspension of deportation, he did not cite or otherwise reference the specific provision of NACARA that makes the couple eligible for relief. *See* Pub. L. No. 104-208, § 309(c)(5)(C)(i) (as described in 8 U.S.C. § 1101 note).

### B.

The Board affirmed the IJ's decision without opinion on December 12, 2002. The couple did not learn of that decision, however, until July 2004. The reason, they say, is that Hicks never notified them of it. The government does not dispute the point for purposes of our decision. (Hicks has disputed the point in a separate proceeding, asserting that his "memory tells [him]" that he "tried to communicate" with the couple after the Board's decision; but he admits that his file has neither "a copy of the BIA's decision" nor "a returned letter in it.") It was only when the Department of Homeland Security refused to renew the couple's work authorizations in 2004 that Castellanos learned—from DHS directly—that their appeal had been rejected approximately 18 months before.

That discovery—and the concomitant one that Hicks had failed to notify the couple of the Board's decision—caused them to lose faith in Hicks. According to a sworn declaration that Castellanos thereafter filed with the Board—whose accuracy the government does not dispute here—the couple sought out a second and then a third opinion as to whether they had any legal basis for relief. Neither lawyer said that they did.

Four years later, on August 7, 2008, DHS agents arrested Gordillo at his home and took him into custody. They did not take Castellanos into custody because of the hardship that would have imposed on the couple's two children, who are American citizens. A few days later, Castellanos met with yet another attorney, Hazel Marinero, who advised her—correctly, by all appearances—that the couple had been eligible for

relief under NACARA all along.  On August 18—about a week after Castellanos's first meeting with Marinero—the couple filed a grievance against Hicks, *see generally In re Lozada*, 19 I. & N. Dec. 637 (BIA 1988), and a motion to reopen their case before the Board.  The couple acknowledged that the motion was untimely on its face, *see generally* 8 C.F.R. § 1003.2(c)(2); but they argued that the filing period for their motion should be equitably tolled as a result of Hicks's ineffective representation of them.

Meanwhile, on August 21, 2008, Gordillo was removed to Guatemala.  He has remained there since.

## C.

The Board denied the motion to reopen on October 21, 2008.  It reasoned that Castellanos and Gordillo had not shown their entitlement to relief under NACARA, which meant they had not shown that Hicks had been ineffective in representing them. That in turn meant that the couple was not entitled to equitable tolling, which finally meant that their motion was untimely.  Castellanos and Gordillo filed a motion to reconsider that denial, arguing that the Board had overlooked several of their exhibits when it denied the motion.

In an order dated May 5, 2009, the Board denied the motion to reconsider as to Gordillo, reasoning that it lacked jurisdiction to reopen his case because he had already been deported.  (More on that below.)  But the Board granted the motion to reconsider as to Castellanos, acknowledging "errors of fact and law in [its] prior decision" and stating that "it appears that [Castellanos] was eligible to apply for benefits under [NACARA]."  The Board again denied her motion to reopen as untimely, however, reasoning that she had not been diligent in seeking competent counsel.

These petitions followed.

## II.

We review the Board's denial of a motion to reopen for an abuse of discretion. *Harchenko v. INS*, 379 F.3d 405, 409 (6th Cir. 2004).

A.

We first consider Gordillo's petition to vacate the Board's October 2008 order as applied to him. The government now seeks a remand of Gordillo's case, having filed a motion to that effect prior to oral argument. Both parties say what the Board itself has already said: that the Board's first ground for denying relief in the October 2008 order—namely, that Gordillo and Castellanos had not shown their eligibility for relief under NACARA—was incorrect.

Despite that agreement, Gordillo opposes the government's motion on grounds of futility. The Board has already said in its May 2009 order that it lacks jurisdiction over Gordillo's case under 8 C.F.R. § 1003.2(d) because he has left the country (albeit not voluntarily); and Gordillo says that, if the government's motion is granted, the Board will simply reiterate that it lacks jurisdiction over his case. The government responds that whether the Board would do so is "uncertain." Gov't Br. at 21.

There are no longer grounds for uncertainty. In *Pruidze v. Holder*, 632 F.3d 234 (6th Cir. 2011), the Board had denied Pruidze's motion to reopen for the same reason it denied Gordillo's motion for reconsideration here—namely, that the government had already deported him, thereby stripping the Board of jurisdiction over his motion per the Board's interpretation of § 1003.2(d). We rejected that interpretation of § 1003.2(d) in *Pruidze,* holding that "no statute gives the Board purchase for disclaiming jurisdiction to entertain a motion to reopen filed by aliens who have left the country." *Id.* at 237. The Seventh Circuit agrees. *See Marin-Rodriguez v. Holder,* 612 F.3d 591, 593 (7th Cir. 2010) (Easterbrook, C.J.) ("As a rule about subject-matter jurisdiction, § 1003.2(d) is untenable"). Thus, the Board's second reason for denying Gordillo relief—that it lacks jurisdiction to do so—is as invalid as the first.

It would not be futile, therefore, to remand Gordillo's case to the Board. We grant the government's motion to that effect and dismiss Gordillo's petition as moot.

B.

Castellanos's petition takes aim at the Board's May 2009 order denying (for a second time) her motion to reopen. The issue before us is one of timeliness, since a motion to reopen normally must be filed within 90 days of the final administrative decision in the proceeding that the alien seeks to reopen. *See* 8 C.F.R. § 1003.2(c)(2). Castellanos's motion to reopen came more than five years after the Board's rejection of her appeal, which was then the final administrative decision in her proceeding. So her motion was facially untimely.

But that is not the end of the matter. "[T]he time for filing a motion to reopen can be equitably tolled[.]" *Harchenko*, 379 F.3d at 410. This doctrine "may be applied to permit reopening when the alien demonstrates that she received ineffective assistance of counsel and was prejudiced thereby." *Mezo v. Holder*, 615 F.3d 616, 620 (6th Cir. 2010). The government does not dispute (at least before us) that Castellanos has made that showing. But it does argue that she was not diligent in pursuing her rights, which is another prerequisite for equitable tolling. *See id.*

That was the basis on which the Board denied Castellanos's motion to reopen in its May 2009 order. Specifically, the Board concluded that Castellanos had not been sufficiently diligent "once [she] was put on notice that [her] prior attorney may have been providing ineffective assistance." That conclusion rested on two grounds: first, Castellanos should have known as soon as "the Immigration Judge rendered his decision" that Hicks had provided ineffective assistance to her; and second, "[w]hile the respondents claim that they contacted various attorneys, this does not adequately explain why it took over five and a half years . . . to file the motion to reopen." We consider these grounds in turn.

The first ground assumes that Castellanos should have understood the relevant immigration law better than her lawyer did. Specifically, the May 2009 order says that Castellanos was "put on notice" of Hicks's ineffectiveness based upon a single footnote in the IJ's 18-page decision denying her relief. That footnote reads in full:

> Six days before the hearing on the merits, respondents also made a motion "to amend relief to include suspension of deportation." At the hearing on the merits this motion was denied as it was not timely filed. The call-up date for the filing of exhibits, not to mention motions, was two weeks prior to today's hearing. And furthermore, no application for suspension of deportation was ever filed. Nevertheless, even the lead respondent was not qualified for this relief as he had not accrued the seven years continuous physical presence. It will be noted that he came to the United States on or about June 18 of 1990, was served with his Order to Show Cause in July of 1996 and pled at the first Master Calendar held on January 23 of 1997.

IJ Order at 3 n.2.

With due respect, it is simply irrational to expect an alien to know from this footnote that her lawyer was ineffective in representing her. The footnote does say that a complicated-sounding motion was "not timely filed"; but to expect an alien to pluck those three words (in a footnote no less) from the thousands of words in the order, and then divine from them that her lawyer overlooked a winning argument on her behalf, is utterly to depart from any reasonable idea of what lies within an alien's control for purposes of assessing her diligence. *See generally Mezo*, 615 F.3d at 621 ("Due diligence requires an alien to prove that the delay in filing the motion to reopen was due to an exceptional circumstance beyond his control" (internal quotation marks omitted)). And apart from those three words, the footnote discusses procedural and substantive minutia that lie completely beyond the ken of the average alien. That is the very reason why aliens (and American citizens too) hire lawyers to represent them. And that a lawyer, once hired, takes a wrong turn in the catacombs of immigration law is no reason to say that his client was dilatory. Suffice it to say that we reject the Board's first ground for denying Castellanos's motion.

That leaves the second ground, which was that Castellanos's efforts to seek advice from other lawyers were not good enough to show that she had been diligent during the period between the Board's December 2002 rejection of her appeal and the filing of her motion to reopen in August 2008. Here is how Castellanos described those

efforts in her sworn declaration, whose accuracy the government does not dispute for purposes of our decision:

> In the summer of 2004, we went to see a different immigration lawyer in Columbus, OH. That lawyer was named Robert Cohen. Mr. Cohen said that our case was denied and that there was nothing that he could do to help us. I asked if he could recommend anyone else, and he said that he could not recommend anyone else. A few months later, we contacted Mr. Ramos, who was a notario [in] Los Angeles, CA. Mr. Ramos had helped out many people from our country. Mr. Ramos checked our case and said that he needed to request the file. We paid him to come to Ohio and investigate the case. He took the paper work and said that he would request our file. He later told us that he had no answer and he could not get the file.
>
> In 2005, my husband saw [a] lawyer in Sacramento named Julie Turner. Her office told my husband that they would contact someone who knew more about Central American cases, but they never got back to us. We tried hard to find an attorney who could give us good advice about our case. My husband also saw other attorneys in the Bay Area, but none could help us and they told us that NACARA was closed.

This declaration makes clear that the couple began consulting other lawyers in mid-2004, after learning that Hicks had neglected to inform them of the Board's rejection of their appeal 18 months earlier. As an initial matter, we think July 2004 is the appropriate time to charge Castellanos with notice of Hicks's (alleged, to be fair to him) incompetence. That sort of omission  is one whose significance anyone can understand.

But more to the point, the declaration is evidence that the couple met with at least two other lawyers who failed to tell them anything different, as to their eligibility for relief, than Hicks had. They also paid for the assistance of a "notario"—who are typically non-lawyers advising aliens in dire straits, and who apparently are often more predatory than helpful, *see About Notario Fraud*, American Bar Association, *available through* http://www.americanbar.org/groups/public_services/immigration.html—which shows that the couple was at least trying to learn whether they had any grounds for relief. Thus, by the end of 2005, the couple had consulted with three lawyers (Hicks, Cohen, and Turner) and a notario, none of whom gave them any reason to think they had

grounds for relief.  It bears mention that the couple had also been recently told the same thing by a United States immigration judge.  The question, then, is whether the couple was not diligent in failing to seek still more legal advice before Gordillo was taken into custody on August 7, 2008.

We hold that they were diligent.  Contrary to the government's arguments before us, the mere passage of time—even a lot of time—before an alien files a motion to reopen does not necessarily mean she was not diligent.  *See Pervaiz v. Gonzales*, 405 F.3d 488, 490 (7th Cir. 2005) (Posner, J.) ("[T]he test for equitable tolling, both generally and in the immigration context, is not the length of the delay . . . ; it is whether the claimant could reasonably have been expected to have filed earlier").  The whole point of equitable tolling is to look beyond the mere passage of time.  Of course, the longer an alien takes to file her motion to reopen, the more explaining she has to do; but the analysis ultimately depends on all of the facts of the case, not just the chronological ones.  And the facts here are different—at least with respect to the period between July 2004 and August 2008—than those in other cases where we have held the alien was not diligent.  Indeed they are inverted:  in the other cases, after learning of a lawyer's ineffectiveness, the alien first did little or nothing for years and then finally took action to seek relief from the Board.  *See, e.g.*, *Pepaj v. Holder*, 321 F. App'x 468, 472 (6th Cir. 2009) (petitioners did nothing for three years after learning that their lawyer had not informed them of the Board's dismissal of their appeal); *Ramirez v. Gonzalez*, 247 F. App'x 782, 785-86 (6th Cir. 2007) (petitioner "did nothing for eight or nine months").  Here, after learning that Hicks had been ineffective, Castellanos and Gordillo first took prompt action to pursue their rights, and only later gave up after repeatedly being told they did not have any.  There is not a whiff of evidence that the couple had any reason to think, before August 2008, that all of those lawyers were wrong and that they were in fact eligible for relief under NACARA.  Castellanos and Gordillo were not dilatory for finally accepting what by all appearances was the reality of their situation.  *Accord Andrews v. Att'y Gen.*, No. 10-1835, 2011 WL 1447619, at *1, *3 (3d Cir. Apr. 15, 2011) (holding that "the BIA abused its discretion in determining that Andrews had not diligently pursued her claims").

That Castellanos finally did obtain good legal advice from Marinero in August 2008—a few days after her husband was taken into custody—does not mean she was dilatory for failing to obtain such advice sooner. There is a difference between diligence and desperation. Castellanos was diligent in the four years before her husband was taken into custody, and surely desperate in the days afterward. The latter finally brought results; but the law requires only the former. The Board abused its discretion in concluding that Castellanos was not diligent in the period between July 2004 and August 2008.

But that still leaves the period between the Board's December 2002 decision and Castellanos's July 2004 discovery that her lawyer had neglected to tell her about it. There is some authority suggesting that Castellanos was obligated to make reasonable inquiries regarding the status of her appeal during that time. *See Hermiz v. INS*, 86 F. App'x 44, 45 (6th Cir. 2003). On the other hand, the immigration bureaucracy itself may have led Castellanos and Gordillo to believe that their appeal remained pending until mid-2004, since it renewed their work authorizations through that date, which it was only permitted to do during the pendency of their appeal (and any subsequent judicial review). *See* 8 C.F.R. § 208.7(b). The denial of the couple's work authorizations in 2004 was indeed what prompted Castellanos to call DHS and learn that her appeal had been decided.

The Board's May 2009 order did not address specifically whether Castellanos and Gordillo were diligent between December 2002 and July 2004. We leave it to the Board to decide that question in the first instance on remand.

\*        \*        \*

We grant the government's motion in No. 08-4584, vacate the Board's October 2008 order as applied to Gordillo, deny his petition as moot, and remand his case for proceedings consistent with this opinion. We grant Castellanos's petition in No. 09-3644, vacate the Board's May 2009 order, and remand her case as well for proceedings consistent with this opinion.