**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0399n.06

**No. 10-3037**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Jun 14, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| OSMAN IVAN BONILLA RAMIREZ, | ) | |
| | ) | |
| Petitioner, | ) | ON PETITION FOR REVIEW |
| | ) | OF THE BOARD OF |
| v. | ) | IMMIGRATION APPEALS |
| | ) | |
| ERIC H. HOLDER, JR., Attorney General, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

BEFORE: ROGERS and KETHLEDGE, Circuit Judges; and RUSSELL, Chief District Judge.[*]

ROGERS, Circuit Judge. Petitioner Osman Ivan Bonilla Ramirez claims that the Board of Immigration Appeals (BIA) violated his Fifth Amendment due process rights by failing to stay his removal mandate pending an adjudication of his mother's asylum application. Because Bonilla presented no evidence that this asylum application was pending or viable, the BIA did not err.

Bonilla is a native and citizen of Guatemala, born March 8, 1985. Bonilla says that he entered the United States in 1993, left in 1996, and returned in 1998. In January 2006, Bonilla's mother filed an application for relief under the Nicaraguan Adjustment and Central American Relief Act (NACARA), Pub. L. No. 105-100, 111 Stat. 2160 (1997). Bonilla also presented an asylum application from his mother, dated November 28, 2005. Bonilla's mother listed him on the applications as a derivative child applicant. These applications stated that Bonilla's mother had

---

[*]The Honorable Thomas B. Russell, Chief United States District Judge for the Western District of Kentucky, sitting by designation.

previously requested and was granted asylum, but that Bonilla "was not included," so she was "resubmitting the form to include" him. Although Bonilla's mother was granted NACARA relief, there is no indication that her asylum application was ever ruled upon. Bonilla's father was also granted NACARA relief, on May 22, 2006. Neither parent was granted NACARA relief before Bonilla turned twenty-one, however; Bonilla turned twenty-one approximately two months after his mother filed her NACARA application. Bonilla filed his own application for NACARA relief simultaneously with his mother's, but he never filed his own application for asylum.

In January 2006, Bonilla filed an application for special rule cancellation of removal as an unmarried child of a parent who had applied for NACARA relief. Bonilla was referred to Immigration Court, and the Government commenced removal proceedings in 2007. The Government charged Bonilla with removability under the Immigration and Nationality Act (INA), § 212(a)(6)(A)(i) (8 U.S.C. § 1182(a)(6)(A)(i)), as an alien present in the United States without admission or parole. The Government alleged that Bonilla entered the United States without inspection on or about January 1, 1998.

At a subsequent hearing before an Immigration Judge (IJ), Bonilla conceded that he was not admitted or paroled after inspection for either of his entries into the United States and that he was removable as charged. This hearing was continued to determine if Bonilla was eligible for relief based on his father's adjustment of status through NACARA. The IJ denied Bonilla's NACARA application for special rule cancellation of removability, and found him removable under INA § 212(a)(6)(A)(i). In considering whether Bonilla would be eligible for derivative asylum based on his mother's asylum application, the IJ found no evidence that Bonilla's mother had been granted asylum, that "it is unlikely that it would be granted if NACARA was granted," and that "even if his

2

mother were granted asylum now, he is over 21 now, and would not be a derivative of that." The IJ granted Bonilla voluntary departure with an alternate order of removability to Guatemala.

Bonilla appealed to the BIA. He argued that his removal mandate should be stayed pending an adjudication of his mother's asylum application. Bonilla claimed eligibility for relief as a derivative under his mother's asylum application by virtue of the Child Status Protection Act (CSPA), Pub. L. No. 107-208, 116 Stat. 927 (2002). Under the CSPA, an unmarried alien seeking derivative asylum status who turns twenty-one while a parent's asylum application is pending continues to be classified as a "child" for purposes of the INA.

The BIA affirmed the IJ's judgment. The BIA held that Bonilla was ineligible for NACARA relief and that the CSPA does not extend to NACARA relief. The BIA declined to stay Bonilla's removal pending the adjudication of his mother's asylum application. The BIA explained that Bonilla had neither filed his own asylum application, nor presented any evidence regarding the status of his mother's application. While noting that Bonilla had submitted a copy of his mother's asylum application, the BIA stated that he "has not established that she is actively pursuing such relief or that the application even remains pending and viable in light of the fact that his mother was granted NACARA benefits." The BIA also noted that Bonilla had not requested a continuance from the IJ on the basis of this stay argument, and that he had not otherwise shown that a stay was appropriate.[1]

Bonilla filed a petition for review with this court on January 14, 2010, arguing that the BIA violated his Fifth Amendment due process rights by failing to stay his removal proceedings pending

---

[1]Because Bonilla had not demonstrated that his mother had a viable asylum application pending, the BIA did not reach his argument about the CSPA's applicability to this application.

the adjudication of his mother's asylum application. On March 24, 2011, Bonilla also filed a motion for this court to stay his removal pending our adjudication of his petition. We denied this motion.

Bonilla's due process argument is without merit. First of all, the BIA's failure to stay Bonilla's removal did not result in a defect in the removal proceedings because Bonilla never presented evidence that his mother's asylum application was pending. As "[a]n alien applying for relief or protection from removal," Bonilla "has the burden of proof to establish that the alien (i) satisfies the applicable eligibility requirements; and (ii) with respect to any form of relief that is granted in the exercise of discretion, that the alien merits a favorable exercise of discretion." 8 U.S.C. § 1229a(c)(A)(4)(i)-(ii). Bonilla did not satisfy that burden here—he could not show that a stay in light of his mother's supposedly pending asylum application was appropriate, since he offered nothing to show that his mother ever filed the application. While Bonilla's mother apparently filled out the application on November 28, 2005, it lacks a Department of Homeland Security date stamp, and its section for completion by an asylum officer is blank. This is evidence that the asylum application, while initially filled out by Bonilla's mother, was never actually filed with the Department. If the application was never filed, it could not have been pending for adjudication.

Had the BIA or the IJ stayed Bonilla's removal for this application to be adjudicated, Bonilla's removal might have been indefinitely delayed: such a stay would prevent Bonilla from being removed so long as his mother's asylum application remained unfiled, thus giving his mother every incentive to delay filing the application as long as possible. This concern is especially realistic given that this asylum application was filled out over five years ago, but may not have been filed in all that time. Given the impropriety of a stay in these circumstances, where Bonilla has no evidence that the asylum application is pending at all, he cannot show that the BIA's refusal to grant a stay

4

of removal gave rise to any defect in the removal proceedings. Without such a defect, there could not have been a due process violation. *See Vasha v. Gonzales*, 410 F.3d 863, 872 (6th Cir. 2005). Certainly the BIA's refusal could not have caused the proceeding to be "so fundamentally unfair that the alien was prevented from reasonably presenting his case," which is the standard for due process violations as set forth in *Hassan v. Gonzales*, 403 F.3d 429, 436 (6th Cir. 2005).

Second, even assuming that the BIA's failure to stay Bonilla's removal did somehow engender a "defect" in the proceedings, "proof of prejudice is necessary to establish a due process violation in an immigration hearing." *Warner v. Ashcroft*, 381 F.3d 534, 539 (6th Cir. 2004). Bonilla can prove no such prejudice, because even if Bonilla's mother were to file her asylum application without further delay, Bonilla has presented no evidence or argument that her application would be viable. Soon after Bonilla's mother applied for asylum, she also applied for, and was granted, NACARA relief. NACARA "makes certain Guatemalans and Salvadorans eligible for suspension of deportation (now called removal) from the United States." *Gordillo v. Holder*, __ F.3d __, No. 08-4584, 2011 WL 1812213, at *1 (6th Cir. May 13, 2011). As the BIA noted, since Bonilla's mother had already been granted relief from removal under NACARA, it was unlikely that she would be granted duplicative relief via asylum. That being the case, the asylum application was no longer viable, and staying Bonilla's removal to adjudicate that application would have only delayed his inevitable removal. An error or defect only prejudices an alien when it "materially affect[s] the outcome of the alien's case." *Al-Ghorbani v. Holder*, 585 F.3d 980, 992 (6th Cir. 2009).

5

In light of the above, declining to stay Bonilla's removal clearly did not materially affect Bonilla's case and thus could not have prejudiced him.[2]  Bonilla's due process claim must fail.

The petition for review is denied.

---

[2]The Government also makes a waiver argument: that Bonilla never requested a stay before the IJ, and that he first argued for a stay in his BIA appellate brief instead of in his BIA notice of appeal.  In light of our ruling, we need not address this waiver argument.