RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0194p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————

MAZEN SHWEIKA,

　　　　　　*Plaintiff-Appellant*,

　　　*v.*

DEPARTMENT OF HOMELAND SECURITY and
DISTRICT DIRECTOR, UNITED STATES
CITIZENSHIP AND IMMIGRATION SERVICES,
　　　　　　*Defendants-Appellees*.

No. 12-1645

Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.
No. 1:09-cv-11781—Thomas L. Ludington, District Judge.

Argued: March 7, 2013

Decided and Filed: July 25, 2013

Before: MOORE, SUTTON, and DONALD, Circuit Judges.

—————————

## COUNSEL

—————————

**ARGUED:** Michael R. Dezsi, LAW OFFICE OF MICHAEL R. DEZSI, PLLC, Detroit, Michigan, for Appellant. Christopher W. Dempsey, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. **ON BRIEF:** Michael R. Dezsi, LAW OFFICE OF MICHAEL R. DEZSI, PLLC, Detroit, Michigan, for Appellant. Christopher W. Dempsey, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.

—————————

## OPINION

—————————

KAREN NELSON MOORE, Circuit Judge. For the past nine years, Mazen Shweika ("Shweika") has prosecuted a single application for naturalization before both the United States Citizenship and Immigration Services ("USCIS") and the U.S. District

1

Court for the Eastern District of Michigan. This ongoing process now raises a narrow question: Does the administrative-hearing requirement in 8 U.S.C. § 1421(c) establish a jurisdictional limitation on judicial review of the denial of an application for naturalization? We answer the question in the negative and conclude that the district court erred in determining that it lacked subject-matter jurisdiction. Accordingly, we **VACATE** the district court's judgment and **REMAND** for proceedings consistent with this opinion.

## I. BACKGROUND AND PROCEDURE

Shweika filed his application for naturalization in April 2004. Three years passed without USCIS completing its review of his application. In response, Shweika obtained a writ of mandamus from the U.S. District Court for the Eastern District of Michigan, which compelled USCIS to finish its review by May 30, 2008. *Shweika v. Cannon*, No. 1:07-cv-10870 (E.D. Mich.), R. 23 (02/29/2008 Order at 5) (Page ID #170). On May 29, 2008, USCIS denied Shweika's application because he failed to provide certified copies of documents related to a prior arrest, and thus could not meet his burden to establish his good moral character.[1] R. 1-3 (§ 1446 Decision at 5) (Page ID #12). Shweika sought an administrative hearing to appeal the denial of his application for naturalization. *See* 8 U.S.C. § 1447(a).

Although regulations require that USCIS schedule an administrative hearing within 180 days of a timely request, 8 C.F.R. § 336.2(b), ten months passed without a hearing. In May 2009, Shweika returned to the district court in what is the instant litigation. *Shweika v. DHS*, No. 1:09-cv-11781 (E.D. Mich.). Again, he sought a writ of mandamus to compel USCIS to decide his naturalization application; alternatively, he sought a hearing de novo before the district court. R. 1 (Compl.) (Page ID #1–6). In January 2010, the government moved either to remand the case to USCIS or to dismiss

---

[1]After being acquitted, Shweika successfully moved for the State of Virginia to expunge his record; accordingly, Shweika argued that no official record existed from which a certified copy could be created. Shweika provided USCIS with a personal copy of his arrest records and acquittal, R. 21-2 (Arrest Records) (Page ID #164–66), and a personal copy of a letter affirming the expungement. R. 21-3 (Expungement Acknowledgment) (Page ID #168).

for lack of subject-matter jurisdiction because Shweika had not exhausted his administrative remedies. R. 13 (Defs.' Mot. to Dismiss or Remand) (Page ID #55–62). In a February 9, 2010, order, the district court found that mandamus relief was unnecessary because Shweika's administrative hearing was scheduled to occur on February 11, 2010. R. 16 (02/09/10 Order at 3) (Page ID #119). However, the district court did not dismiss the case, noting that "[f]ollowing next week's hearing, Plaintiff's naturalization application will be ready for review by this Court." *Id.* at 4 (Page ID #120). Instead, the district court stayed proceedings and allowed the administrative process to continue.

Shweika's February 11 hearing did not go as planned. The presiding immigration officer announced that he would conduct a de novo review of Shweika's application, contrary to Shweika's expectations. Appellees' App. at 67–69 (Admin. Hr'g Tr.). The officer asked about a prior conviction from 1992, and then turned to allegations by Shweika's ex-wife suggesting that Shweika committed domestic violence. *Id.* at 75–80, 100–02. Shweika's attorney asked the officer to stop the hearing on the grounds that the inquiry exceeded the scope of Shweika's appeal; the officer refused and asserted that he had authority to pursue the line of questioning. *Id*. at 103–07. The officer resumed his questioning, at which point Shweika, on the advice of counsel, left the hearing. *Id.* at 109.

Rather than require Shweika to return for a hearing that would satisfy the agency's desired review, USCIS instead denied Shweika's application for naturalization on the basis of the record before it. R. 20-2 (§ 1447 Decision at 6) (Page ID #156). In discussing the hearing, USCIS noted that "'immigration officials may draw a negative inference from a naturalization applicant's silence.'" *Id*. at 5 (Page ID #155) (quoting *United States v. Posada Carriles*, 541 F.3d 344, 357 (5th Cir. 2008)). The decision then stated that Shweika failed to prosecute his application, *cf.* 8 C.F.R. § 335.7 (deeming the failure to provide testimony a failure to prosecute), but separately stated that he "fail[ed] to establish [his] fulfillment of the requirements for naturalization, including those of good moral character." R. 20-2 (§ 1447 Decision at 6) (Page ID #156). Accordingly,

USCIS denied Shweika's naturalization application, but informed him that "[t]his decision is made without prejudice to your right to seek review in accordance with section 310 [8 U.S.C. § 1421] of the Immigration and Nationality Act." *Id*.

Shweika resumed his case in the district court. Under 8 U.S.C. § 1421(c), a district court has broad authority to review the denial of an application for naturalization: the district court conducts a de novo review of the denial; "the court shall make its own findings of fact and conclusions of law"; and, if the petitioner requests, the court "shall . . . conduct a hearing de novo on the application." 8 U.S.C. § 1421(c). The district court held its own evidentiary hearing, during which it permitted USCIS to ask Shweika about any information not obtained at the administrative hearing. Thereafter, the district court found by clear and convincing evidence that Shweika had established his good moral character. R. 48 (02/15/12 Order at 2) (Page ID #418).

In the same order, the district court ordered additional briefing on the question of whether it had subject-matter jurisdiction to grant Shweika's application for naturalization. At issue was the proper interpretation of language in § 1421(c) stating that a district court's de novo review may be sought by "[a] person whose application for naturalization under this subchapter is denied, *after a hearing before an immigration officer under section 1447(a) of this Title*." 8 U.S.C. § 1421(c) (emphasis added). The district court determined that, although a broad "[administrative-]exhaustion requirement is not expressly provided for in the statute . . . it has been inferred from the review process established by the [A]ct." R. 53 (03/27/12 Op. & Order at 12) (Page ID #503) (referring to the Immigration Act of 1990). The district court then interpreted "the Act and its implementing regulations" to impose the following administrative-exhaustion requirements: "the applicant has been examined by [USCIS], has had the application denied, has again been examined by [USCIS] in a 'review hearing,' and has again had the application denied." *Id*. at 14 (Page ID #505). The district court then concluded that the statutory administrative-exhaustion requirements impose *jurisdictional* limitations on a district court.

Applying its jurisdictional analysis to the instant case, the district court found that Shweika failed to exhaust his administrative remedies—in particular, Shweika failed to satisfy § 1421(c)'s administrative-hearing requirement. Shweika attended and participated in an administrative hearing on February 11, 2010. Nevertheless, the district court read into § 1421(c)'s administrative-hearing requirement an all-or-nothing *completion* requirement. According to the district court, "[t]he reasonable implication of the phrase 'after a hearing' is that the applicant is required to complete the hearing." *Id*. at 15 (Page ID #506). The district court then found—notwithstanding its observation that USCIS itself equivocated over whether it denied Shweika's application on the merits or for failing to prosecute his application, *see id.* at 17 & n.1 (Page ID #508)—that Shweika failed to complete his administrative hearing, and thereby failed to satisfy § 1421(c)'s administrative-hearing requirement. On this basis, the district court dismissed Shweika's complaint with prejudice for lack of subject-matter jurisdiction. *Id.* at 26 (Page ID #517). Shweika timely appealed.

## II.  SUBJECT-MATTER JURISDICTION

The crucial issue in this case concerns the district court's conclusion that § 1421(c)'s administrative-hearing requirement imposes a jurisdictional limitation on judicial review. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998) ("[E]very federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review." (internal quotation marks omitted)). "We review de novo a district-court decision to dismiss a complaint for lack of subject-matter jurisdiction." *Hamdi v. Napolitano*, 620 F.3d 615, 619 (6th Cir. 2010). Here, we conclude that the district court erred in holding that it lacked subject-matter jurisdiction.

The Supreme Court has recently sought "to bring some discipline to the use of" the term "jurisdictional." *Henderson v. Shinseki*, — U.S. —, 131 S. Ct. 1197, 1202 (2011). "[A] rule should not be referred to as jurisdictional unless it governs a court's adjudicatory capacity, that is, its subject-matter or personal jurisdiction." *Id.* Noting that "the distinction between jurisdictional conditions and claim-processing rules can be

confusing in practice," *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 161 (2010), the Supreme Court has provided the following "readily administrable bright line" for identifying whether a statutory term is jurisdictional:

> If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue.  But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.

*Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515–16 (2006) (citations and footnote omitted); *accord Sebelius v. Auburn Reg'l Med. Ctr.*, — U.S. —, 133 S. Ct. 817, 824 (2013).  In applying this bright-line test, our "jurisdictional analysis must focus on the legal character of the requirement, which we discern[] by looking to the condition's text, context, and relevant historical treatment."  *Reed Elsevier*, 559 U.S. at 166 (citation omitted) (internal quotation marks omitted).

It is well settled that § 1421(c) provides federal district courts with jurisdiction to review administrative denials of applications for naturalization.  *Zayed v. United States*, 368 F.3d 902, 905 (6th Cir. 2004) ("Under 8 U.S.C. § 1421(c), federal district courts are given jurisdiction to review administrative denials of naturalization applications.").  However, we have not previously addressed whether Congress clearly stated that § 1421(c)'s administrative-hearing requirement imposes a jurisdictional limitation on a district court's ability to review the denial of a naturalization application.[2]  Section 1421(c) states as follows:

> A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this title, may seek review of such denial before the

---

[2]The Ninth Circuit has concluded, in light of recent Supreme Court precedent, that § 1421(c)'s administrative-hearing requirement is "prudential, not jurisdictional."  *Eche v. Holder*, 694 F.3d 1026, 1028 (9th Cir. 2012), *cert. denied*, 81 U.S.L.W. 3475 (2013).  By contrast, unpublished opinions by the Fifth and Eleventh Circuits have treated § 1421(c)'s administrative-hearing requirement as jurisdictional, although neither opinion acknowledged the Supreme Court's recent bright-line test for assessing whether a statutory requirement is jurisdictional.  *See Hong Huang v. Sec'y U.S. Dep't of Homeland Sec.*, 468 F. App'x 932, 935 (11th Cir. 2012), *cert. denied*, — U.S. —, 133 S. Ct. 1460 (2013); *Idahosa v. Bureau of Immigration & Customs Enforcement*, 111 F. App'x 293, 294 (5th Cir. 2004).

> United States district court for the district in which such person resides in accordance with chapter 7 of title 5. Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

With respect to the text of the statute, § 1421(c) "'does not speak in jurisdictional terms.'" *See Auburn Reg'l*, 133 S. Ct. at 824 (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982)) (interpreting the expression "may obtain a hearing"). By way of comparison, other statutes concerning a district court's role in naturalization proceedings *do* employ jurisdictional language. For example, 8 U.S.C. § 1447(b) states that a "[district] court has jurisdiction" when USCIS does not make a determination regarding an application for naturalization within 120 days of conducting its initial examination. Likewise, a separate subsection of § 1421—§ 1421(b)(1), which is entitled "Jurisdiction"—states that district courts "shall have authority to administer" oaths of allegiance to successful applicants for naturalization. *Cf. Auburn Reg'l*, 133 S. Ct. at 825 ("A requirement we would otherwise classify as nonjurisdictional . . . does not become jurisdictional simply because it is placed in a section of a statute that also contains jurisdictional provisions."). We have previously held that Congress's omission of "similarly clear language that would have tied a district court's authority over a claim to a plaintiff's exhaustion of administrative remedies" indicates that Congress did not intend the requirements to be jurisdictional ones. *Hoogerheide v. IRS*, 637 F.3d 634, 638 (6th Cir. 2011). Thus, the fact that Congress mentioned an administrative-hearing requirement without using jurisdictional language, particularly when related statutory subsections do employ jurisdictional language, suggests that Congress has not made a clear statement indicating that § 1421(c)'s administrative-hearing requirement constitutes a jurisdictional limitation.

Although the absence of jurisdictional language provides evidence that Congress did not clearly state that § 1421(c)'s administrative-hearing requirement imposes a jurisdictional limitation, the Supreme Court has cautioned that Congress may nevertheless make a clear statement even if it does not use "magic words." *Auburn Reg'l*, 133 S. Ct. at 824. Accordingly, we must further "consider 'context, including [the

Supreme] Court's interpretations of similar provisions in many years past,' as probative of whether Congress intended a particular provision to rank as jurisdictional." *Id.* (quoting *Reed Elsevier*, 559 U.S. at 168). "Absent specific guidance from the Supreme Court, we look to the function of" § 1421(c)'s administrative-hearing requirement to determine whether Congress intended it to impose a jurisdictional limitation. *See Abraitis v. United States*, 709 F.3d 641, 644 (6th Cir. 2013).

Section 1421(c) permits a person to seek district-court review of the denial of his application for naturalization if the application is denied "after a hearing before an immigration officer." 8 U.S.C. § 1421(c). At issue is § 1421(c)'s administrative-hearing requirement. The administrative-hearing requirement is best characterized as a "claim-processing rule," which the Supreme Court defines as "rules that seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Henderson*, 131 S. Ct. at 1203. Courts have identified several species of claim-processing rules. *See, e.g., Auburn Reg'l*, 133 S. Ct. at 824–25 (filing deadlines); *Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment*, 558 U.S. 67, 73, 81–82 (2009) (exhaustion requirements); *Abraitis*, 709 F.3d at 644 (exhaustion requirements and filing deadlines); *Brentwood at Hobart v. NLRB*, 675 F.3d 999, 1003 (6th Cir. 2012) (geographic limitations). Of these, § 1421(c)'s administrative-hearing requirement is best described as an administrative-exhaustion requirement, because the statutory text indicates that an applicant for naturalization who wishes to seek judicial review of the denial of the application may do so only after an administrative hearing before USCIS.

The Supreme Court has treated claim-processing rules as nonjurisdictional in all but the most exceptional of instances. *See, e.g., Auburn Reg'l*, 133 S. Ct. at 824–25 (concluding that a 180-day time limit for filing a request for hearing before an administrative body was not jurisdictional); *Henderson*, 131 S. Ct. at 1205 (holding that a 120–day filing deadline for seeking review by the U.S. Court of Appeals for Veterans Claims was "a claim-processing rule" that lacked "jurisdictional attributes"); *see also Reed Elsevier*, 559 U.S. at 166 ("A statutory condition that requires a party to take some

action before filling a lawsuit is not automatically 'a *jurisdictional* prerequisite to suit.'" (emphasis in original) (quoting *Zipes*, 455 U.S. at 393)).  *But see Bowles v. Russell*, 551 U.S. 205, 209–10 & n.2 (2007) (declining to reverse a century-old practice of treating the deadline under 28 U.S.C. § 2107(a) for filing a notice of appeal in a civil action as jurisdictional).  In fact, based on our review of Supreme Court decisions, we previously noted that "[e]ach time [the Court] has construed a statutory requirement that a plaintiff proceed in another forum or seek redress in other ways before coming to federal court, it has construed the requirement as nonjurisdictional."  *Hoogerheide*, 637 F.3d at 637.  Likewise, we have frequently concluded that similar administrative-exhaustion requirements are nonjurisdictional claim-processing rules.  *See, e.g.*, *Abraitis*, 709 F.3d at 644–45; *Hoogerheide*, 637 F.3d at 636–37; *Spengler v. Worthington Cylinders*, 615 F.3d 481, 489 (6th Cir. 2010); *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 400 (6th Cir. 2008).

Our recent opinion interpreting 26 U.S.C. § 7429 is particularly instructive.  *See Abraitis*, 709 F.3d at 644.  This is because §§ 1421(c) and 7429(b) have similar structures—both subsections are titled "Judicial review," and both subsections use permissive, plaintiff-oriented language to establish a federal court's jurisdiction.  *Compare* § 1421(c) ("*A person . . . may* seek review of such denial before the United States district court.") (emphasis added), *with* § 7429(b) ("[*T*]*he taxpayer may* bring a civil action against the United States.") (emphasis added).  Moreover, like § 1421(c), § 7429 contains administrative preconditions to judicial review.  § 7429(a)–(b).  In *Abraitis*, we determined that "§ 7429 presents an exhaustion requirement and two filing deadlines as conditions for the relief [a taxpayer] seeks."  *Abraitis*, 709 F.3d at 644.  We thereafter concluded that "[t]hese rules, which 'promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times . . . are quintessential claim-processing rules' that the Supreme Court treats as nonjurisdictional."  *Id.* (quoting *Henderson*, 131 S. Ct. at 1203).  Although § 1421(c) does not include a filing deadline, similar to § 7429 it conditions judicial review on an applicant's having first had his claim reviewed administratively—in this instance, by USCIS through an administrative hearing.  In the absence of any congressional

indication that § 1421(c)'s administrative-hearing requirement is an exceptional case meriting deviation from the conclusion ordinarily reached for other claim-processing rules, we conclude that Congress has not made a clear statement regarding jurisdiction. Accordingly, § 1421(c)'s administrative-hearing requirement does not impose a jurisdictional limitation on judicial review.

We recognize that a regulation provides that "[a] USCIS determination denying an application for naturalization under [§ 1446] *shall not be subject to judicial review* until the applicant has exhausted those administrative remedies available to the applicant under [§ 1447]."[3]  8 C.F.R. § 336.9(d) (emphasis added).  Ordinarily, when the intent of Congress is not clear and "the statute is silent or ambiguous with respect to the specific issue," we apply *Chevron* deference to an agency's interpretation of a statute.[4] *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984).  The question here is whether the general principle of *Chevron* deference applies when an agency construes a statutory provision providing for judicial review.[5]  Although we have not previously considered the issue, several other circuits have concluded that "*Chevron* does not apply to statutes that . . . confer jurisdiction on the federal courts." *Murphy Exploration & Prod. Co. v. U.S. Dep't of Interior*, 252 F.3d 473, 478–80 (D.C. Cir. 2001), *modified on denial of petition for reh'g*, 270 F.3d 957 (D.C. Cir. 2001), *cited*

---

[3] Courts of appeals uniformly agree, across a variety of contexts, that the expression "shall not be subject to judicial review" imposes a jurisdictional limitation when included in a statutory provision. *See, e.g.*, *J.S. v. T'Kach*, 714 F.3d 99, 103–04 (2d Cir. 2013) (witness-relocation statute); *Morris v. Office of Compliance*, 608 F.3d 1344, 1347 (Fed. Cir. 2010) (Congressional Accountability Act); *Sierra Club v. Otter Tail Power Co.*, 615 F.3d 1008, 1020 (8th Cir. 2010) (Clean Air Act); *Al-Siddiqi v. Achim*, 531 F.3d 490, 494 (7th Cir. 2008) (statute authorizing detention of aliens); *Jordan Hosp., Inc. v. Shalala*, 276 F.3d 72, 77 (1st Cir.) (Medicare Act), *cert. denied*, 537 U.S. 812 (2002); *Nat'l Coal. to Save Our Mall v. Norton*, 269 F.3d 1092, 1095 (D.C. Cir. 2001) (statute approving construction of a World War II memorial), *cert. denied*, 537 U.S. 813 (2002).

[4] Both the Secretary of Homeland Security and the Attorney General have authority to "establish such regulations" as each deems necessary for carrying out matters related to immigration and naturalization. 8 U.S.C. § 1103(a)(3), (g)(2). Section 1421(a) vests "sole authority to naturalize persons as citizens of the United States" in the Attorney General, except as limited by the remaining sections of § 1421.

[5] The Supreme Court has concluded that *Chevron* deference applies to an agency's interpretation of its *own* jurisdiction. *City of Arlington v. FCC*, — U.S. —, 133 S. Ct. 1863 (2013). Yet in doing so, the Court made clear that agency jurisdiction and federal-court jurisdiction are distinct concepts; whereas in the agency context "the distinction between 'jurisdictional' and 'nonjurisdictional' interpretations is a mirage," by contrast "[i]n the judicial context there *is* a meaningful line" between "the jurisdictional and nonjurisdictional." *Id.* at 1868.

*with approval in NetCoalition v. SEC*, 715 F.3d 342, 348 (D.C. Cir. 2013); *accord Lindstrom v. United States*, 510 F.3d 1191, 1195 n.3 (10th Cir. 2007) ("Determining federal court jurisdiction is exclusively the province of the courts regardless of what an agency may say." (internal quotations omitted)); *Lopez-Elias v. Reno*, 209 F.3d 788, 791 (5th Cir. 2000) ("[T]he determination of our jurisdiction is exclusively for the court to decide."), *cert. denied*, 531 U.S. 1069 (2001); *see also Bechtel v. Competitive Techs., Inc.*, 448 F.3d 469, 478 (2d Cir. 2006) (Leval, J., concurring in the judgment) ("[B]ecause the statutory interpretation at issue concerns the scope of federal court jurisdiction, it is not a proper subject of deference under *Chevron*."); *Verizon Md., Inc. v. Global NAPS, Inc.*, 377 F.3d 355, 383 (4th Cir. 2004) (Niemeyer, J., concurring in part and dissenting in part) ("*Chevron* deference is not required when the ultimate question is about federal jurisdiction."). Indeed, the Tenth Circuit has declined to apply *Chevron* deference to 8 C.F.R. § 336.9, holding that § 336.9(b)—which, like § 336.9(d), imposes constraints on judicial review under 8 U.S.C. § 1421(c)—"is beyond the authority delegated to the INS and will not be applied" or given deference. *Nagahi v. INS*, 219 F.3d 1166, 1171 (10th Cir. 2000).

We are persuaded by the reasoning employed by our sister circuits in concluding that *Chevron* deference does not apply to an agency's interpretation of a federal court's jurisdiction. First, the conditions that license *Chevron*'s application are not present in this case. "A principal reason why courts pay agencies no deference on jurisdiction-conferring statutes is that such statutes do not grant powers to agencies." *Murphy*, 252 F.3d at 478. Section 1421(c) does not delegate authority to the Executive Branch; rather, it confers power directly on federal courts. *See Nagahi*, 219 F.3d at 1169–70 (holding that Congress's broad delegations of authority to the Attorney General in §§ 1103(a)(3), 1421(a), and 1443(a) do "not extend to creating limits upon judicial review"). Second, a key rationale motivating *Chevron* deference is missing from this case. Courts defer to an administrative agency's interpretation of a statute in part because the agency has expertise that the court does not. *Chevron*, 467 U.S. at 865. Yet federal courts are experts when it comes to determining the scope of federal-court subject-matter jurisdiction. *Murphy*, 252 F.3d at 479. Third, countervailing jurisdictional norms

counsel against deference. The Supreme Court has repeatedly affirmed "the strong presumption that Congress intends judicial review of administrative action." *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 670 (1986); *see Kucana v. Holder*, 558 U.S. 233, 251 (2010) ("We have consistently applied that interpretive guide to legislation regarding immigration, and particularly to questions concerning the preservation of federal-court jurisdiction."); *INS v. St. Cyr*, 533 U.S. 289, 298 & n.9 (2001) (collecting cases). In this case, deference to 8 C.F.R. § 336.9(d) would have the effect of limiting judicial review in contravention of that strong presumption; such deference is especially problematic where, as explained above, Congress has not offered any indication that it intended to overcome this strong presumption. Additionally, the Supreme Court has repeatedly affirmed that federal courts have an independent obligation to determine their own subject-matter jurisdiction. *Henderson*, 131 S. Ct. at 1202; *Arbaugh*, 546 U.S. at 514; *Steel Co.*, 523 U.S. at 95. Requiring that a court defer to an agency's interpretation of the court's own subject-matter jurisdiction would interfere with this independent obligation. *See Verizon Md.*, 377 F.3d at 383; *Murphy*, 252 F.3d at 479–80. Thus, we conclude that deference is not owed to 8 C.F.R. § 336.9(d) to the extent that the regulation interprets 8 U.S.C. § 1421(c)'s administrative-hearing requirement to impose a jurisdictional limitation on judicial review.[6]

---

[6]Were we to conclude that *Chevron* deference applies to a regulation interpreting the scope of federal courts' jurisdiction, we still would not defer to 8 C.F.R. § 336.9(d)'s interpretation of 8 U.S.C. § 1421(c) as imposing a jurisdictional limitation on judicial review. We previously rejected the attempt of the Board of Immigration Appeals ("BIA") to restrict its own jurisdiction in light of *Arbaugh* and its progeny. *Pruidze v. Holder*, 632 F.3d 234, 238 (6th Cir. 2011). There we held that the Attorney General's interpretation of a regulation—an interpretation that restricted the BIA's jurisdiction to hear an alien's motion to reopen removal proceedings if the alien was abroad—"cannot clear the first step of *Chevron* because the [Supreme] Court has drawn a line between mandatory rules and claim-processing rules on the one side and jurisdictional ones on the other." *Id.* at 240; *see Chevron*, 467 U.S. at 842–43 (holding that a court must first determine whether "the intent of Congress is clear," or instead "the statute is silent or ambiguous with respect to the specific issue"). We noted that Congress granted the BIA power to entertain motions to reopen and did not limit the BIA's exercise of that jurisdiction in the manner suggested by the Attorney General. Given the presumption implicit in *Arbaugh*'s bright-line test that Congress will act deliberately when it restricts jurisdiction, we reasoned that "Congress left no gap to fill" when it was silent with respect to the agency's authority to limit its own jurisdiction. *Pruidze*, 632 F.3d at 240.

The same logic leads us to conclude that 8 C.F.R. § 336.9(d) would not survive the first step of *Chevron*. Congress granted district courts the power to review the denial of an application for naturalization. 8 U.S.C. § 1421(c). In the same subsection, Congress included a claim-processing, administrative-hearing requirement. As established above, a claim-processing rule is ordinarily nonjurisdictional. Accordingly, absent a clear statement by Congress that the claim-processing rule in 8 U.S.C. § 1421(c) is "the exceptional one" that should be deemed jurisdictional, *see Auburn Reg'l*, 133 S. Ct. at 825, Congress intends for the default rule—one treating claim-processing rules as

In summary, we conclude that Congress has not clearly stated that 8 U.S.C. § 1421(c)'s administrative-hearing requirement is jurisdictional. Although 8 C.F.R. § 336.9(d) interprets 8 U.S.C. § 1421(c) to contain a jurisdictional limitation, we do not defer to this interpretation because it implicates the scope of a federal court's subject-matter jurisdiction, nor do we find 8 C.F.R. § 336.9(d)'s interpretation persuasive in light of recent Supreme Court precedent. Thus, in the absence of a clear statement from Congress that it intended 8 U.S.C. § 1421(c)'s administrative-hearing requirement to be jurisdictional, we must conclude that the requirement is nonjurisdictional.

Because the district court's incorrect jurisdictional analysis governed its decision, we remand for further proceedings. Notwithstanding our conclusion that 8 U.S.C. § 1421(c)'s administrative-hearing requirement is nonjurisdictional, it does not follow that Shweika was thereby free to disregard the requirement, if in fact he did so. Upon remand, we leave to the district court to reconsider whether § 1421(c)'s administrative-hearing requirement implies a completion requirement; whether Shweika satisfied § 1421(c)'s administrative-hearing requirement; and, if he did not, what nonjurisdictional consequences attach to the failure to satisfy § 1421(c)'s administrative-hearing requirement.[7]

### III. CONCLUSION

For the foregoing reasons, we **VACATE** the judgment of the district court, and **REMAND** for further proceedings consistent with this opinion.

---

nonjurisdictional—to apply. Congress's failure to state that a claim-processing rule is *not* an exception to the rule "is not the kind of silence that aids an agency" in claiming that Congress was silent with respect to whether the administrative-hearing requirement is jurisdictional for purposes of overcoming the first step of *Chevron*. *See Pruidze*, 632 F.3d at 240.

[7] For example, the district court may consider whether statements in USCIS's order affirming the denial of Shweika's application for naturalization amount to a concession by USCIS that Shweika exhausted his administrative remedies.