NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0796n.06

Case No. 12-1520/12-3905

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

Aug 28, 2013

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| LAURA M. SHELDON; CHRISTOPHER TONE; PAUL TAULBEE; SHARON TAULBEE, | ) ) ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiffs-Appellants, | ) ) | UNITED STATES DISTRICT COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| THOMAS J. VILSACK, SECRETARY, | ) | AND |
| DEPARTMENT OF AGRICULTURE, et al., | ) | |
| | ) | THE UNITED STATES |
| Defendants-Appellees, | ) | DISTRICT COURT FOR THE |
| | ) | SOUTHERN DISTRICT OF |
| JP MORGAN CHASE BANK NA; CHASE | ) | OHIO |
| HOME FINANCE, LLC; US BANK, N.A., | ) | |
| | ) | |
| Defendants. | | |

BEFORE:  BATCHELDER, Chief Judge; GUY and BOGGS, Circuit Judges.

ALICE M. BATCHELDER, Chief Judge.  Christopher Tone, Paul and Sharon Taulbee, and Laura Sheldon, the Plaintiffs-Appellants, all purchased homes with loans made by banks and guaranteed by the United States Department of Agriculture's ("USDA") Rural Housing Service ("RHS") through its Guaranteed Loan Program ("program").  They fell behind on their mortgage payments and faced foreclosure.  They sued the banks that made the loans and sued the Defendants-Appellees, including RHS; Thomas Vilsack, Secretary of the USDA; Dallas Tonsanger, Undersecretary for Rural Development at USDA; and Tammye Treviño, Administrator of RHS ("Appellees"), under the Housing Act, 42 U.S.C. § 1441 *et seq.*, and the Administrative Procedure

Act ("APA"), 5 U.S.C. § 551 *et seq.* The district courts dismissed the claims against the banks and the Appellees. Now, in this consolidated appeal, the Appellants continue to argue that the Appellees failed to take actions they should have taken to prevent foreclosure. For the reasons that follow, we affirm.

## I.

The Appellants' circumstances are similar and undisputed. Tone purchased a home in 2007 with a loan from JP Morgan Chase Bank, N.A., guaranteed by RHS. Tone fell behind on his mortgage payments, and Chase eventually notified him of its intent to foreclose. Paul Taulbee purchased a home in 2006 with a loan from Villa Mortgage (the loan was later sold or assigned to U.S. Bank) and guaranteed by RHS. Taulbee fell behind on his mortgage payments, and U.S. Bank filed a complaint for foreclosure. Sheldon purchased a home in 2008 with a loan from J.P. Morgan Chase Bank, N.A., guaranteed by RHS. Sheldon fell behind on her mortgage payments, and Chase scheduled a foreclosure sale.

The Appellants' nearly identical complaints before the district courts claimed that the Appellees violated the Housing Act and the APA when they failed to implement various parts of the Housing Act that allegedly would have helped prevent foreclosure.[1] The Appellants made seven claims, asserting that they should have received the benefits of (1) moratorium relief, (2) refinancing, (3) loan assignment and reamortization, (4) loss mitigation, (5) loan modification and partial claims,

---

[1] The Appellants also alleged that their respective banks breached their fiduciary duties by failing to offer or properly consider the Appellants for foreclosure avoidance and loss mitigation options. The *Tone* district court granted Chase's and U.S. Bank's motions to dismiss, and the *Sheldon* district court granted Chase's motion for judgment on the pleadings. The Appellants have not appealed those orders.

(6) an alleged statutory right to appeal lenders' decisions, and (7) constitutional due process. The Appellants sought declaratory judgments as well as injunctions, under the APA, that would require the Appellees to implement foreclosure-avoidance and loss-mitigation provisions of the Housing Act.[2] The Appellees moved the district courts to dismiss claims (1), (4), (6), and (7) for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). They also argued that claims (1)-(6) should be dismissed for failure to state a claim under Rule 12(b)(6).

The district courts dismissed claims (1) and (4) for lack of subject-matter jurisdiction, and claims (2), (3), and (5) for failure to state a claim upon which relief could be granted. They dismissed claims (6) and (7) for lack of standing.

On appeal, the Appellants continue to argue the seven claims outlined above. Despite the wording of individual provisions in the Housing Act, they argue that Congress's national housing policy, which prefaces the Housing Act and is found at 42 U.S.C. § 1441, eliminates the Appellees' discretion over whether to implement certain provisions of the Act. They argue that some of their claims should be addressed under 5 U.S.C. § 706(2), not § 706(1). And they argue that their statutory and constitutional due-process rights were violated.

## II.

We review de novo a district court's decision to grant a motion under Rule 12(b)(1) to dismiss for lack of subject-matter jurisdiction. *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1123 (6th Cir. 1996). "We review de novo whether the district court properly dismissed a complaint pursuant

---

[2] Tone and the Taulbees brought their case as a class action. The district court denied their motion for class certification as moot after it dismissed their case.

to Rule12(b)(6)." *Ashland Hosp. Corp. v. Serv. Emps. Int'l Union, Dist. 1199*, 708 F.3d 737, 740 (6th Cir. 2013). We also review de novo the dismissal of a claim for lack of standing. *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 348 (6th Cir. 2007).

"Because this court's de novo review involves only application of legal propositions to the undisputed facts in the record, we may affirm on any grounds supported by the record even if different from the reasons of the district court." *Abercrombie & Fitch Stores, Inc., v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 629 (6th Cir. 2002). Before we may address a claim's merits, we must assess whether we have jurisdiction over that claim. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998) (finding there is no "doctrine of hypothetical jurisdiction" (internal quotation marks omitted)). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Id.* at 94 (1998) (internal quotation marks omitted). We cannot assume jurisdiction for the purpose of deciding the merits of the case. *Id*. at 94-95.

**A.**

The district courts' opinions provide overviews of the Housing Act. The district court in *Tone* explained:

> The Housing Act of 1949, 42 U.S.C. § 1441 *et seq.* ("the Housing Act"), was enacted to promote "the elimination of substandard and other inadequate housing through the clearance of slums and blighted areas, and the realization as soon as possible of the goal of a decent home and a suitable living environment for every American family." 42 U.S.C. § 1441. In furtherance of that goal, Section 502(a) of the Housing Act authorizes the Secretary of Agriculture (the "Secretary") to make direct loans to borrowers seeking to finance affordable housing in rural areas. *See*

42 U.S.C. § 1472(a). RHS, an agency within USDA, implements Section 502 programs. RHS acts as the lender and handles the servicing of Section 502(a) direct loans.

In 1990, Congress amended Section 502 of the Housing Act by adding subsection (h), entitled "Guaranteed Loans." Among other things, this subsection authorizes RHS to guarantee a loan made by a commercial lender to low-income borrowers who wish to purchase or construct a single-family residence in a rural area. *See* 42 U.S.C. § 1472(h). RHS is authorized to guarantee a loan in an amount equal to 90 percent of the loan. *Id.* The commercial lender is responsible for the processing, servicing, and liquidation (if necessary) of the loan. *See* 7 C.F.R. § 1980.309(f).

In 2009, Congress passed the Helping Families Save Their Homes Act, which amended section 502(h) and included additional protections against foreclosures of RHS guaranteed loans. *See* 42 U.S.C. § 1472(h)(13)-(17). Among other things, the amendments direct mortgagees to engage in loss mitigation actions upon default or imminent default of RHS guaranteed loans. *See* 42 U.S.C. § 1472(h)(13). The amendments also give RHS the authority to approve the modification of guaranteed loans that are in default or facing imminent default. *See* 42 U.S.C. § 1472(h)(14). The amendments give RHS the authority to establish a program for the payment of partial claims to mortgagees who agree to apply the claim amount to the payment of a loan in default or facing imminent default. *Id.* The amendments give RHS the authority to establish a program for the assignment of guaranteed loans to the Secretary "upon the request of the mortgagee." 42 U.S.C. § 1472(h)(15). The amendments also give RHS the authority to guarantee a loan that is made to refinance an existing Section 502 direct or guaranteed loan. 42 U.S.C. § 1472(h)(17). Generally, Plaintiffs claim that the Federal Defendants have failed to implement these additional protections against default.

*Tone v. Vilsack*, No. 1:10CV891, 2012 WL 1229926, at *1-2 (S.D. Ohio Apr. 12, 2012); *see also*

*Sheldon v. Vilsack*, No. 11-10487, 2012 WL 1068099, at *4-6 (E.D. Mich. Mar. 29, 2012)

(explaining Housing Act).

The Appellants' arguments draw from a portion of the Housing Act, 42 U.S.C. § 1441, that

contains a lengthy Congressional declaration of national housing objectives and policy spanning

nearly 30 lines and containing multiple provisions. The Appellants rely on Congress's general goal

of housing for every American family, and point to agencies' responsibility to act consistently with the housing policy.

The Appellants seek judicial review under the APA of the Appellees' alleged failures to implement the Housing Act. Under certain circumstances, the APA gives courts the authority to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).[3] Before a court may act under § 706(1), "a party must first clear the hurdle of [5 U.S.C.] § 701(a)," which governs when courts may exercise judicial review over the actions or inactions of agencies. *See Heckler v. Chaney*, 470 U.S. 821, 828 (1985). Judicial review (and relief through § 706(1)) will be unavailable "to the extent that (1) statutes preclude judicial review; or (2) *agency action is committed to agency discretion by law*." 5 U.S.C. § 701(a)(1)-(2) (emphasis added); *see Heckler*, 470 U.S. at 828. "An agency action is committed to agency discretion by law if the statute does not provide a 'meaningful standard against which to judge the agency's exercise of discretion.'" *Madison-Hughes*, 80 F.3d at 1127 (quoting *Heckler*, 470 U.S. at 830). "A meaningful standard does not exist where the applicable law is so broadly drawn that the court has no standard or substantive priorities against which to measure an agency's discretion." *Id.* We "do not have subject matter

---

[3]On appeal, the Appellants argue that some of their claims should be evaluated under 5 U.S.C. § 706(2), not § 706(1). We disagree. Though their complaints before the district courts cited § 706 without specifying subsections (1) or (2), their complaints and, when carefully analyzed, their arguments on appeal speak in terms of the Appellees' *failure* to act. Because the gravamen of the Appellants' claims is that the Appellees failed to act that agency action did not occur when and where it should have § 706(1) is the relevant provision. We note that both district courts already considered and correctly rejected analyzing the Appellants' claims under § 706(2) because the Appellants focused on the Appellees' alleged failure to act rather than on specific, affirmative agency action. *See Tone*, 2012 WL 1229926, at *2 n.2; *Sheldon*, 2012 WL 1068099, at *6 n.3.

jurisdiction to review agency actions that are 'committed to agency discretion by law.'" *Madison-Hughes*, 80 F.3d at 1127 (quoting 5 U.S.C. § 701(a)(2)).[4]

What permits judicial review of agency action under § 701(a)(2) resembles what will enable a court to "compel agency action" under § 706(1). "[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004); *see id.* at 65 ("The limitation to *required* agency action rules out judicial direction of even discrete agency action that is not

---

[4]In a footnote in *McCarthy v. Middle Tennessee Electric Membership Corp.*, 466 F.3d 399 (6th Cir. 2006), we questioned but did not conclusively address whether three Supreme Court cases Arbaugh v. Y & H Corp., 546 U.S. 500 (2006), *Eberhart v. United States*, 546 U.S. 12 (2005) (per curiam), and *Kontrick v. Ryan*, 540 U.S. 443 (2004) invalidate *Madison Hughes*'s statement that courts do not have subject matter jurisdiction to review agency decisions committed to agency discretion by law under 5 U.S.C. § 701(a)(2). *McCarthy*, 466 F.3d at 406 n.9.

These cases do not negate *Madison Hughes*'s treatment of § 701(a)(2) as circumscribing subject matter jurisdiction. *Eberhart* and *Kontrick* both found that time limitations, in the contexts of criminal procedure rules (*Eberhart*) and of bankruptcy rules (*Kontrick*), were not properly labeled as "jurisdictional," but instead were claim processing rules. *See Eberhart*, 546 U.S. at 15 16; *Kontrick*, 540 U.S. at 453 55, 459 60. *Arbaugh* held that Title VII's employee numerosity requirement (that an "employer" must have 15 or more employees for Title VII to apply, *see* 42 U.S.C. § 2000e(b)), located in the definitions section of the statute, did not circumscribe subject matter jurisdiction, but rather related to the "substantive adequacy" of the plaintiff's claim. *Arbaugh*, 546 U.S. at 504.

*Arbaugh* provided a "bright line" test for identifying whether a statutory term is jurisdictional: "If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue. But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Id.* at 515 16 (footnote and citation omitted); *see generally Shweika v. Dep't of Homeland Sec.*, F.3d , , No. 12 1645, 2013 WL 3821545, at *3 6 (6th Cir. July 25, 2013) (quoting and applying *Arbaugh*'s test). In applying *Arbaugh*, we need not look in the statute for "magic words" that identify the requirement as being requisite for jurisdiction. *See Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. , , 133 S. Ct. 817, 824 (2013). Rather, "our 'jurisdictional analysis must focus on the legal character of the requirement, which we discern[] by looking to the condition's text, context, and relevant historical treatment.'" *Shweika*, F.3d at , 2013 WL 3821545, at *4 (alteration in original) (quoting *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010)).

Chapter 7 of the APA governs "judicial review," and § 701(a)(2) expressly limits when we may review agency action under the APA. Section 701(a)(2)'s requirement is neither a claim processing rule like the rules in *Eberhart* and *Kontrick*, nor an element of a plaintiff's claim as was the employee numerosity definition in *Arbaugh*. It is a prescription that delineates the "classes of cases (subject matter jurisdiction) . . . falling within a court's adjudicatory authority." *Kontrick*, 540 U.S. at 455. In classes of cases where we have no meaningful standard by which to evaluate the agencies' exercise of discretion, we have no jurisdiction.

demanded by law . . . ."). In other words, § 706(1) empowers a court to compel an agency to perform only "non-discretionary" actions. *See id.* at 64 (internal quotation marks omitted).[5]

Because we lack subject-matter jurisdiction to review agency actions committed to agency discretion, *Madison-Hughes*, 80 F.3d at 1127, it is necessary to assess whether the relevant provisions of the Housing Act give the Appellees discretion. If so, we lack authority to decide the Appellants' claims. *See id.*

**B.**

The portion of the Housing Act relevant to the Appellants' first claim — that the Appellants should have received "moratorium relief" — provides:

> During any time that any such loan is outstanding, the Secretary *is authorized* under regulations to be prescribed by him to grant a moratorium upon the payment of interest and principal on such loan for so long a period as he deems necessary, upon a showing by the borrower that due to circumstances beyond his control, he is unable to continue making payments of such principal and interest when due without unduly impairing his standard of living.

---

[5] We note that the district courts dismissed claims (2), (3), and (5) under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, even though the courts generally pointed to the same rationale — the Appellees' discretion under the Housing Act's provisions — to justify dismissal here as they did to justify dismissal of claims (1) and (4) under Rule 12(b)(1). We address claims (2), (3), and (5) in the context of subject matter jurisdiction under 5 U.S.C. § 701(a)(2). Finding that, as we explain below, the Appellees' discretion defeats subject matter jurisdiction under 5 U.S.C. § 701(a)(2), we need not address whether their discretion might create a Rule 12(b)(6) problem under 5 U.S.C. § 706(1).

42 U.S.C. § 1475(a) (emphasis added). Both district courts were right to focus on the statute's authorizing, not requiring, the Secretary to act.[6] Because the statute is so broadly drawn, we lack a meaningful standard against which to measure the Secretary's exercise of discretion.

But the Appellants argue that the housing policy, 42 U.S.C. § 1441, eliminates agency discretion with respect to the moratorium provision. They refer to Congress's "goal of a decent home and a suitable living environment for every American family." *Id.* They also quote a part of the housing policy that directs that federal agencies with responsibility for housing "shall exercise their powers, functions, and duties under this or any other law, consistently with the national housing policy declared by this Act and in such manner as will facilitate sustained progress in attaining the national housing objective hereby established." *Id.*

What the Appellants point to in the housing policy    Congress's general goal of facilitating housing for American families, and agencies' responsibility to act in accord with that goal    does not provide us with a meaningful standard of review by which we can evaluate the Appellees' exercise of discretion. *See generally Norton*, 542 U.S. at 65-66 (finding that courts cannot apply § 706(1) to specific decisions committed to agency discretion even where Congress has provided a general objective for an agency to pursue).[7] Reading the moratorium provision in the context of the

---

[6]The district courts provided another basis for dismissing the Appellants' moratorium claim: that RHS's interpretation of the "such loan" language in 42 U.S.C. § 1475(a)    an interpretation that "such loan" refers only to direct loans, not guaranteed loans    receives deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). Because that interpretation makes a moratorium available only for direct loans, and because the Appellants held guaranteed loans, the district courts found that the Appellants failed to state a claim upon which relief can be granted. We need not decide the issue here.

[7]Our forcing the Appellees to implement the moratorium provision    as well as other parts of the Housing Act which give the Appellees discretion    in the manner the Appellants advocate might actually violate the housing policy. Part of the "policy to be followed in attaining the national housing objective," which the Appellants leave unmentioned,

housing policy's general goal does not permit us to decide the Appellants' claim. *See* 5 U.S.C. § 701(a)(2); *Madison-Hughes*, 80 F.3d at 1127.

The Appellants' second claim is that they should have received refinancing under the Housing Act. This claim is based on three statutory provisions. The first provides that "[t]he Secretary of Agriculture . . . *is authorized* . . . to extend financial assistance . . . for refinancing indebtedness which . . . if not refinanced, is likely to result . . . in the loss of the applicant's necessary dwelling." 42 U.S.C. § 1471(a) (emphasis added). The second provides that "[u]pon the request of the borrower, the Secretary shall . . . guarantee a loan that is made to refinance an existing loan"; but "[t]he Secretary *may establish limitations* on the number of loans guaranteed under this paragraph, which shall be based on market conditions and other factors *as the Secretary considers appropriate.*" 42 U.S.C. § 1472(h)(17)(A), (F) (emphases added). The third provides that "[a]ny guaranteed loan under this subsection *may* be refinanced and extended *in accordance with terms and conditions that the Secretary shall prescribe.*" 42 U.S.C. § 1472(h)(9) (emphases added).

The Appellants dislike the Appellees' decisions not to offer refinancing for guaranteed loans under 42 U.S.C. §§ 1471(a) and 1472(h)(17), and argue that 42 U.S.C. 1472(h)(9), read in light of the housing policy, requires refinancing. But, because the provisions denote discretion, and because   as explained above with respect to the moratorium provision   the relevant part of the housing policy does not provide a meaningful standard by which to adjudicate the alleged failure to

---

is that "private enterprise shall be encouraged to serve as large a part of the total need as it can." 42 U.S.C. § 1441. Any additional requirements placed on commercial lenders who participate in the program will increase the costs of making loans through the program. Increasing that cost could discourage private entities from serving "as large a part of the total need" as they otherwise would be willing to serve.

provide refinancing, the district courts lacked subject-matter jurisdiction over the Appellants' second claim. *See* 5 U.S.C. § 701(a)(2); *Madison-Hughes*, 80 F.3d at 1127.[8] We affirm dismissal.

The Appellants' third claim relates to the assignment[9] of loans. The Housing Act provides that "[t]he Secretary *may* establish a program for assignment to the Secretary, upon request of the mortgagee, of a mortgage on a 1- to 4-family residence guaranteed under this chapter." 42 U.S.C. § 1472(h)(15)(A) (emphasis added). The Appellants argue that RHS's being assigned loans is not within the Appellees' discretion. But that argument ignores the Secretary's discretion over the establishment of an assignment program in the first place. We have no meaningful standard by which to adjudicate his choice not to establish such a program here. Nor does the housing policy cabin his discretion.

The Appellants' fourth claim alleges that the Appellees failed to require lenders to provide loss mitigation to borrowers. The relevant provision says:

> Upon default or imminent default of any mortgage guaranteed under this subsection, mortgagees shall engage in loss mitigation actions for the purpose of providing an alternative to foreclosure (including actions such as special forbearance, loan modification, pre-foreclosure sale, deed in lieu of foreclosure, as required, support for borrower housing counseling, subordinate lien resolution, and borrower relocation), *as provided for by the Secretary*.

---

[8] That RHS has implemented a refinancing program under 42 U.S.C. § 1472(h)(17) for which the Appellants are ineligible does not change our analysis. We lack any meaningful standard by which to evaluate RHS's decision not to refinance loans of borrowers who are in arrears; nor could we, under § 706(1), compel RHS to refinance the Appellants' individual loans.

[9] The Appellants' third cause of action also refers to "reamortization"; the Appellants take issue with RHS's decision in 1991 to stop requiring commercial lenders to provide reamortization to borrowers. The Appellants would like RHS to reinstate its former requirement. They claim that RHS's dropping the requirement in 1991 is reviewable under 5 U.S.C. § 706(2). But the Appellants give no authority to show that RHS's ceasing to require commercial lenders to reamortize guaranteed loans supports a claim under § 706(1) or (2), or that the Appellants may bring this claim now (twelve years after RHS exercised its discretion in this way).

42 U.S.C. § 1472(h)(13) (emphasis added). Whether lenders engage in loss mitigation is up to the Secretary, and we have no meaningful standard by which to evaluate the Secretary's decision. Though the Appellants again point to the housing policy, 42 U.S.C. § 1441, they are    for the same reasons outlined above    mistaken to conclude that it enables our review. Accordingly, we lack jurisdiction.

For the Appellants' fifth claim, which relates to loan modification and partial claims,[10] the Appellants look to 42 U.S.C. § 1472(h)(14):

> The Secretary *may authorize* the modification of mortgages, and establish a program for payment of a partial claim to a mortgagee . . ., for mortgages that are in default or face imminent default, as defined by the Secretary. Any payment under such program directed to the mortgagee shall be made at the *sole discretion* of the Secretary and on terms and conditions acceptable to the Secretary . . . .

42 U.S.C. § 1472(h)(14) (emphasis added). Again, § 1472(h)(14) gives the Secretary discretion; we have no power to "compel agency action," 5 U.S.C. § 706(1), here.

In short, we affirm the district courts' judgments as to claims one through five on the basis that, because the Housing Act provides the Appellees with discretion, we lack jurisdiction to consider the Appellants' claims.

## C.

The district courts dismissed the Appellants' sixth and seventh claims, which relate to statutory and constitutional due process, because the Appellants did not demonstrate any injury in fact and so lack standing. Standing is an aspect of justiciability, *Warth v. Seldin*, 422 U.S. 490, 498

---

[10] Partial claims are mortgage payments the Secretary may make (on behalf of borrowers) to commercial lenders and for which borrowers must eventually repay the Secretary. *See* 42 U.S.C. § 1472(h)(14).

(1975), and "a plaintiff must demonstrate standing for each claim he seeks to press," *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006). The question of standing asks whether a party has a sufficient stake in the controversy. *Sierra Club v. Morton*, 405 U.S. 727, 731-32 (1972). "Typically . . . the standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Allen v. Wright*, 468 U.S. 737, 752 (1984). There are three constitutional limitations on standing:  injury in fact, causation, and redressability. *See Steel Co.*, 523 U.S. at 102-03. Of particular relevance here is the "injury in fact" requirement:  "[T]he plaintiff must have suffered an injury in fact   an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (footnote, citations, and internal quotation marks omitted).

The portion of the Housing Act relevant to the Appellants' sixth claim provides that the

> Secretary *shall have the power to* . . . issue rules and regulations which assure that applicants denied assistance under this subchapter or persons or organizations whose assistance under this subchapter is being substantially reduced or terminated are given written notice of the reasons for denial, reduction or termination and are provided at least an opportunity to appeal an adverse decision . . . .

42 U.S.C. § 1480(g) (emphasis added). The Appellants claim that the statute requires RHS to create an appeals process so that private lenders' decisions can be reviewed.

Section 1480(g) places the issuance of rules and regulations squarely within the Secretary's discretion, and RHS has already established an appeals process that precludes borrowers' appealing lenders' decisions. *See* 7 C.F.R. § 1980.399 ("Decisions made by the Lender are not covered by this paragraph . . . ."); *id.* § 1980.399(b)(2) ("The Lender's decision to deny servicing relief is not subject

to appeal."). The Appellants can show no injury no invasion of a protected legal interest resulting from the way the Secretary chose to implement 42 U.S.C. § 1480(g). The Appellants have no protected legal interest in an appeals process that the Secretary was authorized, but not obligated, to establish.

Appellant Sheldon[11] also claims that she has constitutionally protected property interests in "various provisions" in the Housing Act, and claims that she is entitled to notice of RHS's decisions and to appeal those decisions despite agency regulations that govern the guaranteed loan program and indicate the contrary. But she fails to show, specifically, how she suffered the injury in fact necessary for standing. If the Housing Act and APA required specific action of the Appellees under the provisions raised in claims one through six, her argument might have merit. Because no action was required, there was no injury in fact necessary for Sheldon to have standing.

## D.

Tone and the Taulbees argue that the district court erred in denying their motion for leave to amend their complaint and that, if we rule in their favor, the district court should reconsider their motion. Because we affirm the dismissal, we need not act on the conditional request.

Sheldon argues that the district court abused its discretion by dismissing her complaint with prejudice when the Appellees could have asked Sheldon to clarify her complaint and when she sought to clarify her argument in her response to the Appellees' motion to dismiss and in a surreply. But Sheldon never moved for leave to amend her complaint, so the district court did not abuse its

---

[11]Tone and the Taulbees do not raise the constitutional due process argument on appeal, though the Appellees still address the argument in their brief.

discretion.  *See Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 572 (6th Cir. 2008) ("The district court does not abuse its discretion in failing to grant a party leave to amend where such leave is not sought." (internal quotation marks omitted)).

### III.

For the foregoing reasons, we **AFFIRM** the judgments of the district courts.